Home Savings Bank *vs.* Bartolomeo Rolando *et al.*
JANUARY 20, 1937.

Present: Flynn, C. J., Moss, Capotosto, and Condon, JJ.

Flynn, C. J.   This action in assumpsit was before this court previously on the plaintiff's exception to the decision of the Superior Court discharging the garnishees. See *Home Savings Bank* v. *Rolando*, 165 A. 364.   It is here now, after a second hearing in the Superior Court, on the exception of the law firm of Pettine, Godfrey and Cambio to the decision of that court charging them as garnishees, and upon certain exceptions of Frank D. McKendall, who was permitted to intervene after the opinion above was ren-

dered and before the second hearing in the Superior Court.

The facts of the case sufficiently appear in the opinion above referred to and it is not necessary to repeat them here. The chief question now presented is entirely different from that which was presented when this court last heard the matter on the plaintiff's exceptions. At that time, the case was remitted to the Superior Court for a rehearing on the ground that "the trial justice either forgot or misconceived the testimony."

In view of our ultimate finding, the present proceeding will be treated hereafter as upon the exception of the garnishees, who now urge that the trial justice, who presided at the second hearing, erred in charging these garnishees, under the writ of mesne process, after he had held that Anthony V. Pettine, individually, could not be charged as garnishee under the original writ, and after all other garnishees named in the original writ had filed affidavits showing no funds. Their argument summarized amounts to this: Inasmuch as the attempted garnishment of the defendants' property in the hands of garnishees named in the original writ proved abortive, there was no proper service of original process necessary under our statute to the institution of a valid action against nonresident defendants. Therefore, they argue, the Superior Court was without jurisdiction to issue the writ of mesne process, based on the original writ, and to charge them as garnishees named therein.

It appears that this action was commenced by an original writ of attachment dated July 19, 1928, by the plaintiff bank of *Boston, Massachusetts*, against Bartolomeo Rolando and Olga Rolando of *Seekonk, Massachusetts,* as defendants, and sought to garnishee funds in the possession of The Providence Institution for Savings, the Lincoln Trust Company and Anthony V. Pettine, as trustees of said defendants. No service of the writ other than a notice forwarded by mail, was made on either of the defendants, who plainly appear on said writ as *non-*

*residents.* No appearance by or for the defendants, or either of them, was entered in the case at any time. Each of the banks named as a trustee of the defendants, filed the customary form of garnishee's affidavit that it had, at the time of service of the writ, no funds belonging to the defendants, without making any further explanation.

The affidavit of Anthony V. Pettine, the remaining trustee named in the writ, was filed August 10, 1928, and set out, in considerable detail, certain professional relations with the defendants, which he had had, not however as an individal, but merely as one of the law firm of Pettine, Godfrey and Cambio. This affidavit further set out that, except as a member of said firm, he had no funds of the defendants in his hands or possession, directly or indirectly. It admitted possession by the law partnership of funds in the amount of $2,137.65 received from the defendants, and deposited in the law partnership account at its bank at the time the writ was served on Anthony V. Pettine, personally.

The return-day named in the original writ was August 10, 1928, and it was duly entered in the Superior Court on that day. The Lincoln Trust Company duly filed in court on August 9, 1928, its garnishee affidavit disclosing no funds of the defendants; Anthony V. Pettine filed his affidavit on August 10, 1928; and the Providence Institution for Savings filed its affidavit declaring no funds of the defendants, on September 17, 1928. The plaintiff, on September 12, 1928, sued out a writ of mesne process garnisheeing the funds of the defendants in the hands and possession of Anthony V. Pettine, Edward L. Godfrey and Frank C. Cambio, copartners doing business under the firm name of Pettine, Godfrey and Cambio. This writ, by its terms, was issued "in addition and as auxiliary to an original writ returnable to said Court on August 10th, 1928," and was served on the partnership firm on September 13, 1928.

On the second hearing in the Superior Court, following the earlier opinion of this court, the presiding justice ruled that Anthony V. Pettine, individually, could not be charged as garnishee under the original writ, but that, by virtue of the writ of mesne process, the firm of Pettine, Godfrey and Cambio was properly chargeable as garnishee, and he so decided. The plaintiff took no exception to such refusal of the presiding justice to charge Anthony V. Pettine individually, nor to the disclosures of the other garnishees as filed. Apparently it was content with the decision of the court charging the partnership firm as garnishee under the writ of mesne process. However, the law firm duly excepted to the decision, charging it as garnishee, and, by its bill of exceptions, it questions the correctness of this decision on two main grounds, only one of which need be considered here.

The firm contends that, when the presiding justice found Anthony V. Pettine individually was not chargeable, as garnishee, and when it appeared that there was no garnishment of any funds in the hands of any of the other named garnishees, the Superior Court was without jurisdiction to proceed further with the matter; and therefore the issuing of a writ of mesne process, being based upon an original writ which never legally subjected the defendants' or their property to the court's jurisdiction to charge the garnishees named in the writ of mesne process.

This contention was made by the garnishees in the Superior Court and was rejected by the presiding justice. He expressed the opinion that, notwithstanding the failure of service of the original writ on the nonresident defendants, and their nonappearance personally, or by counsel, to defend the action, the writ of mesne process, if it attached property of the defendants, gave the court jurisdiction to proceed, on the theory, as he expressed it, that: "Possibly the proceeding then is one more in *rem* than in *personam.*"

We are unable to adopt the reasoning of the trial justice on this point. It seems to us that the question here is entirely one of jurisdiction. Either there was pending before the Superior Court on the return-day of the original writ, on August 10, 1928, a valid action against these defendants, or there was not. If there was such a valid action pending, the court had jurisdiction to issue a writ of mesne process; otherwise it had no such jurisdiction.

An action, as here, seeking to subject the residents of another State to the jurisdiction of the courts of this State, is not properly commenced, so as to give the court jurisdiction over the nonresident defendants, unless the original writ is served strictly in accordance with the statute. A writ of summons, if not served within the State, is not sufficient to begin such an action. General Laws, 1923, Chap. 350, requires a valid attachment or garnishment as a condition precedent to proper service of a writ against nonresidents. Where, as here, it appears conclusively in the record that the original writ by which the action was intended to be commenced has failed to subject the persons or property of the defendants to the jurisdiction of the court, then it follows that no valid action exists.

General Laws, 1923, Chap. 349, Sec. 17, does not appear to authorize a writ of mesne process as an original writ in a proceeding in *rem* against nonresidents, as indicated by the trial justice. This chapter provides that the plaintiffs "in any action may . . . sue out of the court in which the action shall have been commenced, a writ of mesne process commanding the attachment of the real or personal estate of the defendant, including his personal estate in the hands or possession of any person . . . as the trustee of the defendant." Such language seems clearly to indicate that a writ of mesne process is not the original writ to commence an action, but is a writ dependent upon an action previously commenced by proper service of an original writ. The bar, generally, seems to have acquiesced in such an interpretation for many years and the language, which

appears in the writ of mesne process in question, explicitly states that it is in addition and as auxiliary to the original writ. The plaintiff, in issuing it and in its attitude toward it in the Superior Court, did not treat it fully as an original writ which commenced the action, but rather as one dependent upon an action properly commenced by an original writ. Perhaps one difficulty which weighs against treating it as an original writ is the requirement of General Laws, 1923, Chap. 337, that the *writ and declaration* must be entered on the return-day of the writ in the Superior Court. No declaration was entered with the writ of mesne process on September 28th.

According to our view, the language of the chapter authorizing the writ of mesne process presupposes the existence of a valid action, not then reduced to judgment, pending in the court out of which the mesne process is issued. In the instant case, the writ of mesne process was not served until September 13, 1928, three days after the return-day of the original writ. On that date, the status of the case in the Superior Court was this: The original writ had not been served on the defendant personally or at any last or usual place of abode within this State; nor had any appearance been made by or for them in this case; there was no garnishment valid in law of any personal property of the defendants in the hands of any person or firm as trustee for them within this State and there was no attachment of any real or other property belonging to them. There was a total failure to fulfill the conditions necessary to give the court any jurisdiction over these non-resident defendants. No valid action, therefore, was commenced or pending to support the jurisdiction of the court to issue a writ of mesne process in the case. Because of such a failure to acquire any jurisdiction over the defendants, the effect, in law, is as if the original writ and declaration were never issued or entered in court.

The fact that the Providence Institution for Savings had not made disclosure at the time the writ of mesne

process was served on the partnership, that it had no funds of the defendants, or that the court had not then decided that Anthony V. Pettine, individually, could not be charged as garnishee, does not help the plaintiff. Four days later, the bank did file its affidavit, which was not excepted to, wherein it disclosed no funds of the defendants in the garnishee process *at the time the original writ was served on it.* The decision of the court, to which no exception was taken by the plaintiff, held that Anthony V. Pettine had no funds of the defendants *at the time the writ was served on him.* The controlling factor here is not *when* the court decided the question, but rather *what* it decided; here, it decided facts as of the date when the original writ was served, which deprived the court of any right to entertain jurisdiction of the case at all. Moreover, on the return-day of the writ of mesne process, which was September 28, 1928, it was then established, beyond question, from the record that the original writ and the action based thereon were nullities, at least from September 10, for the reason that it had failed in every respect to bring either the persons of the nonresident defendants before the court or to subject any of their property in the hands of residents of this State to the jurisdiction of the court. Unless the original writ validly served is not necessary to the proper institution of an action, we can not see, in the circumstances presented here, how it can be successfully argued that the court had jurisdiction to issue the writ of mesne process. We are of the opinion that an original writ properly served is indispensable to the commencement of an action, at least, when the writ is one of attachment or garnishment and where the jurisdiction of the court depends entirely on the existence of a valid attachment or garnishment in the first instance.

Attachment and garnishment are statutory remedies and are in derogation of the common law. Service of writs upon nonresidents in a manner to subject constitutionally those nonresidents to the jurisdiction of our State courts

is likewise a statutory right. Under well-recognized principles of construction we are required to give a strict construction to such statutes. If this construction seems technical or works any hardship, as it may in this case, it is something over which the law court has no control.

It must be noted that the action is one at law based upon statutory rights and is not a case in equity. We are not dealing here with mere irregularity of service in an original writ, but one where its commands were properly executed by the sheriff and where there is a total failure of service. No cases have been cited to us by either party upon this novel point. In deciding it we are not assisted by cases from other jurisdictions where the practice of instituting suits in some manner different from our practice of instituting cases by an original writ of attachment may prevail. It must be decided upon jurisdictional questions according to the principles of law and not of equity. The plaintiff bank chose to come from Massachusetts, where the courts had jurisdiction of the plaintiff and defendants, and to employ a statute which may have been designed to protect residents of Rhode Island who desired to bring nonresidents before the courts of this State. This point, however, has not been argued.

For the reasons stated, we must hold that the Superior Court was without jurisdiction and therefore was in error in charging Pettine, Godfrey and Cambio as garnishees under the writ of mesne process of attachment. In view of this finding, the exceptions of Frank D. McKendall are, without prejudice, not passed upon.

The exception of the garnishees, Pettine, Godfrey and Cambio, is sustained, and the case is remitted to the Superior Court for further proceedings in accordance with this opinion.

Moss, J., dissenting. I do not agree with either the reasoning or the conclusion in the opinion of the court. The question at issue is whether the service of the writ of attachment, which the plaintiff caused to be issued on

September 12, 1928, as a writ of mesne process, and which on the next day was served on the members of a partnership, Pettine, Godfrey and Cambio, as garnishees of the defendants, and statutory notice of which was given to the defendants, must be held to be nugatory, simply because of two facts. The first is that at that time no service in the State on the defendants, nonresidents, had been made of the original writ issued July 19, 1928, but only notice given by mail. The second is that it was determined, long after the service of the later writ, that no funds of the defendants were in the hands of any of the three garnishees named in the original writ, when service of that writ was made on such garnishees.

Nearly all the pertinent facts have been stated in the opinion of the court. For greater clarity I will restate some of these and add some others which seem to me important. The original writ was duly served, as above stated, on the three garnishees named therein, and was filed in court on the return-day, August 10, 1928, with an officer's return on it showing such service and proper statutory notice to the defendants.

On September 12 and 13, when the writ of mesne process was issued and served, the Lincoln Trust Company, one of the garnishees named in the original writ, had filed on August 9 an affidavit of no funds; Mr. Pettine, another of the garnishees, had filed on August 10 a qualified affidavit of no funds and a prayer for judgment by the court as to whether he should be charged; and the third garnishee had filed no affidavit at all, though later, on September 17, it filed an affidavit of no funds, which apparently has never been questioned.

In General Laws, 1923, Chap. 351, entitled: "Of Certain Provisions Concerning Attachments", there are provisions for taking evidence on questions of fact raised on a garnishee's affidavit, and for determining whether a garnishee should be charged; and in Secs. 22 and 23, it is provided, in substance, that any garnishee may file an answer to the

action and defend the same in behalf of these defendants and that, if it shall appear by the disclosure that the garnishee had none of the personal estate of the defendant in his hands, then the action or suit shall be dismissed, "unless the writ has been duly served on the defendant." This last provision sets forth a method by which, under the conditions stated, a final judgment may be entered which will terminate the case. The only natural inference from this is that unless the case is dismissed because no funds are caught by attachment, or is discontinued by the plaintiff, or is abated by the death of a party, it will continue to be pending.

On March 6, 1929, in accordance with the above statute, the plaintiff filed in the case a motion in which it recited that Pettine, as garnishee in the original writ, had filed a garnishee's affidavit by himself; that the Lincoln Trust Company, also as garnishee in that writ, had filed a garnishee's affidavit by George W. Holt; and that Pettine, Godfrey and Cambio, as garnishees in the later writ, had filed an affidavit by Frank C. Cambio. In this motion the plaintiff moved that said Pettine and Holt and Cambio, the affiants, be summoned to appear before the court, to be examined and cross-examined upon all matters relating to or connected with the facts set forth in such affidavits. An order was entered, on March 6, 1929, granting the motion and setting March 13, 1929, as the date for such examination; but apparently no hearing was held as a result of this motion.

On March 8, 1932, and April 20, 1932, hearings were held in the Superior Court and testimony taken, as the result of a similar motion filed and order entered on February 18, 1932; and as a result of this hearing a decision was filed on June 8, 1932, which found that the garnishees should be discharged, giving, as the only reason, that they had no personal property of the defendants in their hands when the writs were served upon them. The plaintiff took an exception to the discharge of the garnishees

Pettine, Godfrey and Cambio and no other exception; and after a hearing in the Supreme Court on a bill of exceptions, this exception was sustained, on the ground that the trial justice had either forgotten or misconceived the testimony as to the garnishees having funds of the defendants in their hands, and the case was remitted to the Superior Court "for a rehearing on the question of charging the garnishees." *Home Savings Bank* v. *Rolando*, 165 A. 364.

At the rehearing, which was had in the Superior Court, when evidence was introduced, these garnishees, Pettine, Godfrey and Cambio, contended, not only that the evidence showed that they had no personal property of the defendants in their hands at the time of the service on them of the writ of mesne process, but also, evidently for the first time, that the service was nugatory because no service had been made of the original writ either upon the defendants or upon any property of theirs. Both of these contentions were overruled by the decision of the Superior Court and the case is now before this court on exceptions by these garnishees to that decision.

Therefore, at the time when the later writ was served, Pettine had raised the issue of whether or not he was chargeable as garnishee under the original writ, an issue which the plaintiff contested and which was not determined until June 8, 1932; the Lincoln Trust Company's affidavit of no funds had tendered a similar issue, which the plaintiff later contested, as above shown; and no affidavit had yet been filed by the third garnishee. The same situation existed when the later writ was returned in court; except that an affidavit of no funds had been filed by that third garnishee. No attempt had been made under the above-mentioned statute to have the action dismissed. It never has been dismissed or abated or discontinued; and no final judgment has been entered.

From the above facts and the above-mentioned provisions of the statute the only reasonable conclusion, in my judgment, is that the action was at that time pending in

the court, even though no writ had been served on the defendants, and no property of theirs had been attached in the hands of the garnishees in the original writ, as determined only years later.

It is provided in Sec. 9, Chap. 334, G. L. 1923, entitled: "Of the Limitation of Actions", that: "If any action which has been or shall be duly commenced within the time limited and allowed therefor, shall be abated or otherwise avoided or defeated by the death of any party thereto, or for any matter, . . . the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit." It is well settled that the mere issuing of a writ with the intent to have it served is the commencement of an action within the meaning of that section, whether or not it is actually so served. *Taft & Co.* v. *Daggett,* 6 R. I. 266, 272.

To my mind this is clearly correct; and it is at least equally clear to me that when an original writ of attachment in an action against a nonresident of this State has been issued with the intent of having it served on garnishees who have personal property of the defendant in their hands, and it has accordingly been served on garnishees, and the statutory notice of such writ and service has been duly given to the defendant, and the writ, with a return thereon, showing such service and notice, and also with a declaration accompanying it, has been filed in the court on or before the return-day of the writ, then such action has been commenced in that court, whether or not any of the garnishees had personal property of the defendant in their hands at the time of such service. It is also clear to me that such action will continue to be pending in the court until disposed of by abatement or discontinuance, or by a final judgment against one side or the other; and that the extra year of grace will begin to run from the time of such disposition of the case.

The writ of mesne process in the instant case was issued

under Sec. 17, Chap. 349, G. L. 1923, the first part of which is as follows: "The plaintiff in any action may, as often as may be necessary, at any time before final judgment in such action, sue out of the court in which the action shall have been commenced, a writ of mesne process commanding the attachment of the real or personal estate of the defendant, including his personal estate in the hands of any person, copartnership, or corporation, as the trustee of the defendant." In my opinion this writ was issued in entire accordance with the authority given by that section. The action had been commenced in the court out of which that writ was sued, and the writ was sued out before any final judgment in the action. In fact the issue as to whether any of the property of the defendants had actually been attached under the original writ had not even been joined, but was later joined and contested.

I cannot see that the fact that the defendants were non-residents of the State and could not be served with legal process in the case makes any difference in this matter. The action was not to get a money judgment enforceable against them outside of the State, but to subject property of theirs inside of it to the payment of money which the plaintiff claimed to be due from them, and they were given proper notice as to the service of each of the writs. As to this action, the defendants could either come in and fight it, or stay out and leave the garnishees to make any contest. They chose the latter course, and therefore the question now is simply one between the plaintiff and Pettine, Godfrey and Cambio as garnishees under the second writ. I can see no justification for holding that as to these garnishees that writ was not validly issued and validly served.

No case entirely "on all fours" with the instant case on this point has been found, but all of the cases that I have found which seem to me relevant support the above conclusion. Most of them are cases in which *alias* writs of summons were issued in actions after valid original writs of summons therein had failed of their purpose to bring

the defendants before the courts; but some of them are more closely parallel to the instant case.

In *Everett* v. *Niagara Ins. Co.,* 142 Pa. St. 322 (1891), the court says at page 329: "The policy stipulated that no action upon it should be sustained unless commenced within twelve months next after the fire should have occurred. Such contracts are valid: . . . The present case, therefore, depends upon two questions: First, whether this is an *alias* based upon and supported by the prior writ; and, secondly, if so, whether the contract limitation applies to the period between the issue of the original and the *alias*. The present writ is an *alias* summons in form, and was duly issued as such; but calling it an *alias* will not make it one in effect, if in fact the original was dead at the time this issued. The service of the original was set aside, but the writ itself remained, and beyond question kept the action alive, at least until the entry of the nonsuit." The *alias* writ was issued after the entry of the nonsuit, but the court held that the nonsuit was invalid because entered on the motion of the defendant, who was not before the court for that purpose. The court held therefore that the later writ was *"an alias"* in fact as well as in name.

The court also held that although the *alias* writ had been issued more than twelve months after the fire, that was no defense to the defendant, since the action had been begun by the issuing of the original writ within the period and kept alive by the issuing and service of the *alias* writ. The court says: "The present plaintiff has brought himself strictly within his agreement. He began his action within the time specially agreed, and kept it alive by the means and within the time allowed him by the law. It was no fault of his that the first writ was ineffectual to bring the defendant into court, but his misfortune did not go beyond the failure of the service. . . . The cases of *Hocking* v. *Insurance Co.,* 130 Pa. 170 and *Riddlesbarger* v. *Insurance Co.,* 7 Wall. 386, are widely distinguishable.

In them the first action had come to an absolute end, and that which the plaintiffs had commenced, after the stipulated period had expired, was a new and distinct action."

In *Oil & Gas Well Supply Co.* v. *Gartlan & Ahner,* 58 W. Va. 267, 52 S. E. 524, (1905), a writ of summons was issued and returned "not found". Several successive *alias* writs of summons were issued, under a statute permitting this to be done in such a situation, and were similarly returned. About two months after the issuance of the first writ a writ of attachment was obtained and issued and was served on a garnishee. Later, service by publication was made on the defendants. The declaration was filed when ordered under the rules, after several continuances. On motion of one of the defendants, appearing specially for the purpose, the attachment was quashed, on the ground that it was not issued in a pending suit. This ruling was reversed by the Supreme Court, which, citing many authorities, held that the action was commenced from the time when the first writ was sued out and that it was still pending when the writ of attachment was served. At page 273, the court says: "An *alias* writ or summons regularly issued is the continuation of an original valid process, and not the inception of a new suit. 1 Cyc. 748, citing *Insurance Co.* v. *Vaughan,* 88 Va. 832 (14 S. E. 754), and many other authorities." At page 275, (52 S. E. 527), it says that "as the defendant had neither been served with process nor had appeared in the action, the same had not abated or been dismissed."

In *Anderson* v. *Lane,* 105 Mich. 89 (1895), the first part of the opinion is as follows: "The relator sued out a writ of replevin for certain goods in the possession of one William A. Bennett. The writ was returned duly served. The defendant in the case appeared specially, and moved to dismiss the proceedings for the reason that the copy of the writ served upon him was not certified by the officer. This motion was granted, and the writ dismissed. Application is now made for mandamus to require the circuit

judge to vacate the order of dismissal. The service was irregular. How. Stat. § 8326, provides that the service shall be made by delivering to the defendant personally a certified copy of the writ, if the defendant can be found; but the proper practice in such case is to allow an *alias* writ to issue, rather than to dismiss the proceeding."

In some of the cases, in which the statute of limitations was not involved, the courts have reached the same result as in those above cited, by treating the later writ as if it were an original writ which started a new structure on the ruin of the old one, and treating the declaration, petition or other statement of the case, which was filed in connection with the first writ, as if it were filed in connection with the later writ, all of the papers in the whole matter being in the same court file.

In *Davis* v. *Ballard,* 38 Neb. 830, (1894), the plaintiff filed her petition on September 10, 1891, in the District Court of Lancaster county against John G. Ballard and others. Upon the same day a summons was issued which, on September 23, was returned *non est inventus.* On March 1, 1892, an *alias* summons was issued, which, on March 3, was returned as served on Ballard, the other defendants not being found. He entered a special appearance and objected to the jurisdiction of the court, one ground of objection being that the petition was filed on September 10, 1891, and permitted to remain on file until March 1, 1892, when the *alias* summons was issued. The trial court sustained the objections and dismissed the action. At page 834, the Supreme Court says: "When the petition was filed and the original summons issued, Ballard was in Lancaster county and legally liable to service there. The action was rightfully commenced in Lancaster county, at that time; but aside from that consideration, the proceeding of March 1, 1892, amounted to a new commencement of the action at a time when Ballard was in the county, when an action could be rightfully commenced and when, as a matter of fact, it was proceeded

with and service obtained. The mere fact that the petition had remained on file presents no reason for denying the jurisdiction of the court. It is clear that had the same petition been taken and refiled upon March 1, when the *alias* summons was issued, no question could be raised. The commencement of an action depends not only upon filing a petition, but the issuance of summons. For some purposes it is not deemed commenced until the summons is served, although after service the commencement of a suit may relate back to the date of the summons. . . . In order that an action should be commenced there must in every case be a petition on file and a summons issued based upon that petition. Both these essentials existed on March 1, as soon as the *alias* summons was issued. The first summons having proved abortive, the issuance of an *alias* summons for the purposes of this case must be deemed the commencement of the action, and for the reasons stated we think the learned judge erred in sustaining the defendant's objections."

In *Goodlett* v. *Hansell*, 56 Ala. 346, 348, (1876), the court says: "It may be admitted, that the original summons, if issued on the sabbath, would have been abated on plea. It was not executed on the defendant personally, as was shown by the return of the sheriff, and the issue of an *alias* was ordered by the court. The *alias*, when issued, became the leading process, compelling the appearance of the defendant when executed. Defects in the original, not entering into it, are not the subject of a plea in abatement to it, and are not available in any mode to defeat it."

In *Danville & Western R. R. Co.* v. *Brown*, 90 Va. 340, (1893), no valid service had been made of the original writ and later the defendant on that ground had moved to quash all the processes and this motion was denied. After a verdict for the plaintiff, the Supreme Court, in proceedings on writ of error, sustained the decision, saying: "The first and chief cause of complaint is, that the circuit court refused to quash all the processes and to re-

mand the case to rules. It appears from the record that the plaintiff, on the 9th day of May, 1891, sued out a summons from the circuit court of Henry county, returnable to the third Monday in May, 1891, when he filed his declaration in the clerk's office, and the case was continued for process. On the 6th day of July, 1891, an *alias* summons issued directed to the . . . sheriff of Henry county, which summons was returned as executed by delivering a copy to H. C. Lester, a director of the defendant company, on the 29th of August, 1891. . . . We think that the process of August 27, 1891, by whatever name it may be called, is good and valid as an original process. The simple circumstance that it is characterized as an *'alias* writ,' and that it runs 'We command you *as we have before'* or, *'at another time* commanded you', &c., cannot possibly affect or change its essential character or render it less effectual as a process for bringing the defendant before the court, and this is all that any original summons does."

In *Axtell* v. *Gibbs,* 52 Mich. 639, 640, (1884), an action of assumpsit was brought on October 25, 1882, by an original writ, in which a third person was named as garnishee of the defendant. The garnishment service was all right in itself, but no service of summons was made on the defendant and the required notice of the garnishment was not given him, within the statutory period for such service or notice. On February 8, 1883, a further summons purporting to be an *alias* summons was taken out and it was in due time served on the defendant. Later, motions were made to dismiss the garnishment proceedings and to dismiss the action. Both motions were sustained in the lower court.

In the Supreme Court the decision dismissing the garnishment proceedings under the original writ was sustained because of the failure to serve the summons on the defendant or to give him notice of the garnishment within the statutory period; but the decision dismissing the *action* was reversed, the court, in its opinion by Cooley, J., stating that the action could be kept alive by successive writs,

and that if the defendant came within the State, the plaintiff could take out an *alias* writ for the purpose of getting service on him. The court then added: "But if the last writ had no proper basis as an *alias*, it was not for that reason void. If the first writ had gone down, this should have been treated as a new writ for a new suit, and sustained accordingly."

From this language, it seems clear to me that if in that case, as in the instant case, the second writ had been a writ of attachment and had been duly served as such and proper notice of the service had been given to the defendant, that writ and the service of it would have been sustained by the court and the case would have gone on as an attachment suit. In the instant case, if the writ of mesne process were amended by striking out the words describing it as such a writ, it would be just like an original writ of attachment. There is ample authority under our statute of jeofails, (G. L. 1923, Chap. 335, Secs. 3, 4), to make it proper for this court to have the writ so amended, or to treat it as if so amended, since no just and substantial rights of the garnishees or of the defendants would be injured thereby. If it were so amended, or treated as if so amended, then, as cases above discussed show, the garnishees' exception to the decision of the Superior Court, that this writ and the service thereof were valid, could not properly be sustained on the ground that no declaration was filed with the writ, since a declaration was filed with the original writ and would be found, by the defendants and any garnishees, in the same file of court papers as both writs and with the same title and number.

After nearly six years of litigation, with two full hearings in the Superior Court and an intervening one in this court and with every opportunity given to the garnishees and used by them, to protect all their just and substantial rights, the plaintiff fairly won, on the merits of the controversy with them, a decision charging the garnishees. For the reasons above given and on the authorities above

discussed, I am convinced that there is no justification for now depriving the plaintiff of this decision, by sustaining the garnishees' exception on the highly technical ground set forth in the opinion of this court and thus very likely leaving the plaintiff without any substantial remedy on his claim against the defendants.

*George F. Troy, Lee & McCanna,* for plaintiff.

*Pettine, Godfrey & Cambio,* for garnishees.

*McGovern & Slattery, James A. Higgins,* for Frank D. McKendall.