UNITED STATES of America

v.

**J. TIROCCHI & SONS, INC., Vincent Tirocchi and Valentino Tirocchi.**

Civ. A. No. 2572.

United States District Court
D. Rhode Island.

Jan. 26, 1960.

**646**

Joseph Mainelli, U. S. Atty., Samuel S. Tanzi, Asst. U. S. Atty., Providence, R. I., for plaintiff.

Jacob S. Temkin, Samuel Olevson, Benedetto A. Cerilli, Providence, R. I., for defendants.

DAY, District Judge.

This is an action brought by the United States pursuant to the provisions of 40 U.S.C.A. § 489.[1] Jurisdiction of this Court to hear, try and determine this action exists under the provisions of 40 U.S.C.A. § 489(c).

---

1. This section provides as follows:

"§ 489. *Civil remedies and penalties; jurisdiction and venue; additional penalties*

"(a) Where any property is transferred or disposed of in accordance with this chapter, chapter 11B of Title 5, chapter 4 of Title 41, and chapter 11 of Title 44 and any regulations prescribed hereunder, no officer or employee of the Government shall (1) be liable with respect to such transfer or disposition except for his own fraud, or (2) be accountable for the collection of any purchase price for such property which is determined to be uncollectible by the Federal agency responsible therefor.

"(b) Every person who shall use or engage in, or cause to be used or engaged in, or enter into an agreement, combination, or conspiracy to use or engage in or to cause to be used or engaged in, any fraudulent trick, scheme, or device, for the purpose of securing or obtaining, or aiding to secure or obtain, for any person any payment, property, or other benefits from the United States or any Federal agency in connection with the procurement, transfer, or disposition of property under this chapter, chapter 11B of Title 5, chapter 4 of Title 41, and chapter 11 of Title 44—

"(1) shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the cost of suit; or

"(2) shall, if the United States shall so elect, pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by the United States or any Federal agency to such person or by such person to the United States or any Federal agency, as the case may be; or

"(3) shall, if the United States shall so elect, restore to the United States the money or property thus secured and obtained and the United States shall retain as liquidated damages any property, money, or other consideration given to the United States or any Federal agency for such money or property, as the case may be.

"(c) The several district courts of the United States, the District Court of the United States for the District of Columbia, and the several district courts of the Territories and possessions of the United States, within whose jurisditional limits the person, or persons, doing or committing such act, or any one of them, resides or shall be found, shall wheresoever such act may have been done or committed, have full power and jurisdiction to hear, try, and determine such suit, and such person or persons as are not inhabitants of or found within the district in which suit is brought may be brought in by order of the court to be served personally or by publication or in such other reasonable manner as the Court may direct.

"(d) The civil remedies provided in this section shall be in addition to all other criminal penalties and civil remedies provided by law. June 30, 1949, c. 288, Title II, § 209, 63 Stat. 392."

In addition to jurisdictional averments, the plaintiff's complaint alleges that "during the years 1954 through 1959, inclusive, the defendants, together with one Donald J. Boisvert, used and engaged in and caused to be used and engaged in, and entered into an agreement, combination and conspiracy to use and engage in a fraudulent trick, scheme and device for the purpose of securing and obtaining surplus property from the United States to which they were not entitled"; and that said surplus property therein described had a value in excess of $200,000. The complaint prays for relief as provided in 40 U.S.C.A. § 489.

Upon the filing of said complaint, the plaintiff obtained a writ of attachment from the Clerk of this Court directing the attachment of the real and personal estate of each of the defendants. In compliance with the provisions thereof, the United States Marshal for this District promptly attached certain real and personal estate belonging to each of the defendants. Subsequently, on December 7, 1959, the defendants moved that said attachments be dissolved, that said writ of attachment be quashed and that all the property attached thereunder be released to the defendants. This motion was consolidated for hearing with like motions filed in three similar actions instituted by the plaintiff against other defendants and was heard by me on December 14, 1959. At the conclusion of said hearing I reserved decision on all of said motions pending consideration of memoranda to be filed by counsel.

The availability of the remedy of attachment in this action is governed by the provisions of Rule 64 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides as follows:

"Seizure of Person or Property

"At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action."

It is conceded by the plaintiff that there is no statute of the United States which grants the remedy of attachment in the instant action. Therefore, under Rule 64, I must look to the law of Rhode Island to determine the validity of said attachments. In this regard, three separate provisions of the Rhode Island statutes must be noted.[2] First, 2 Gen.Laws R.I. (1956), § 10–5–2 provides as follows:

"10–5–2. *Affidavit to support original writ.*—An original writ commanding the attachment of the real or personal estate of the defendant, including his personal estate in the hands or possession of any person, co-partnership or corporation, as the trustee of the defendant, and his stock or shares in any banking association or other incorporated company, may be issued from the superior court, or any district court, whenever the plaintiff in the action

2. The fact that the writs of attachment here in issue were designated as writs of mesne process is of no moment, since the law of Rhode Island with respect to such writs merely refers back to the law authorizing original writs of attachment. See 2 Gen.Laws R.I. (1956), § 9–5–14.

to be commenced by such writ, his agent or attorney, shall make affidavit, to be indorsed thereon or annexed thereto, that the plaintiff has a just claim against the defendant, that is due, upon which the plaintiff expects to recover in such action a sum sufficient to give jurisdiction to the court to which such writ is returnable."

Secondly, 2 Gen.Laws R.I. (1956), § 10-5-5 provides as follows:

"10-5-5. *Writ of attachment after filing of bill in equity.*—In any cause in equity, at or after the filing of the bill, the complainant may move the superior court, ex parte, to issue a writ of attachment, to run against the property of the respondents or any respondent in said cause; and the court, in its discretion, if the cause be of such a nature that an attachment of property be for the proper security of the complainant, shall on such motion, properly supported by affidavits to be filed in said cause, enter an order granting a writ of attachment, which writ may command the attachment of the real and personal estate of the defendant, including his personal estate in the hands or possession of any person, co-partnership or corporation, as the trustee of the defendant and his stock or shares in any banking association or other incorporated company, like a writ of attachment at law in conformity to the specific directions in said order; and shall be served in like manner and be subject to like incidents as a writ of attachment at law, and shall be returnable at such time, and for such ad damnum, as shall be directed in said order and stated in such writ. And all property so attached shall be held for the security of any final decree which the complainant may obtain in his favor in said cause, in pursuance of the directions of the order granting such writ of attachment."

And finally, 2 Gen.Laws R.I. (1956), § 10-5-6 provides as follows:

"10-5-6. *Original writ in tort action against nonresident.*—Actions at law sounding in tort may be instituted against nonresidents having property within the state by original writ of attachment in form as provided by law; and such original writ of attachment shall be issued from the superior court or any district court wherever the plaintiff in the action to be commenced by such writ, his agent or attorney, shall make affidavit, to be indorsed thereon or annexed thereto, that the defendant is a nonresident, and that the plaintiff has a just cause of action against the defendant, upon which the plaintiff expects to recover a sum sufficient to give jurisdiction to the court to which such writ is returnable."

■ Two of the foregoing statutory provisions require little discussion, as it is clear that neither of them is applicable in the context of this case. There is no allegation that any of the defendants is a nonresident of the State of Rhode Island. Hence, § 10-5-6 can afford no basis for the validity of said attachment. Similarly, § 10-5-5 by its terms provides that attachments in proceedings in equity may be had only after the Court, upon motion duly made, has entered an order granting a writ of attachment. No such motion was ever filed here, nor was any such order entered in this action. The plaintiff's contention that the writ of attachment issued by the Clerk of this Court is equally sufficient in legal or equitable proceedings is untenable. The distinction as to the availability of the remedy of attachment under Rhode Island law in proceedings in equity is clearly pointed out by the Supreme Court of Rhode Island in Marsh v. Moore, 1932, 52 R.I. 458, at page 461, 161 A. 227, at page 228, where Chief Justice Stearns, speaking for the Court, held:

"* * * In an action at law an original or *mesne* writ of attachment is issued on the affidavit of

plaintiff or his agent of a valid claim sufficient to give jurisdiction to the court. The writ is issued without an order of the court, and the particular property to be attached and the amount thereof is determined by the plaintiff. The procedure in a suit in equity is different, as a motion by complainant and an order by the court for issuance of the writ is required. The order is discretionary with the court, and may direct the attachment only of so much of the property of the respondent as the court shall decree."

■■ The fact that this is a federal, not a state, tribunal does not obviate the requirement in equitable proceedings that a motion for the issuance of a writ of attachment be made by a complainant and that the Court exercise its discretion with reference to the issuance of such writ. Rule 64 by its terms provides expressly that "all remedies providing for seizure of person or property * * * are available under the circumstances and in the manner provided by the law of the state in which the district court is held." And see Chappell & Co. v. Haddad, D.C.Mass.1940, 1 F.R.D. 221. Writs of attachment in proceedings in equity are not available under the law of Rhode Island in the absence of an affirmative exercise of *judicial* discretion. Thus even if the complaint in this action can be construed as alleging a claim or claims cognizable in equity—a question which it is not necessary for me to decide here— it is clear that the writ issued in this action was not issued in accordance with the provisions of § 10–5–5.

■ The only substantial question presented by the instant motion is whether or not the issuance of said writ of attachment was authorized by the provisions of § 10–5–2. The test is whether or not the instant complaint states a cause of action of the nature in which said § 10–5–2 makes provision for attachment.

The defendants contend that under § 10–5–2 a writ of attachment is not available when the cause of action is one sounding in tort. On the other hand, the plaintiff argues that said section authorizes an attachment in all actions at law, whether ex delicto or ex contractu, wherein the damages are measured by any commercial or business standard. All the parties agree that the relative merits of these contentions depend upon the interpretation to be given to the decision of the Supreme Court of Rhode Island in the landmark case of Mainz v. Lederer, 1902, 24 R.I. 23, 51 A. 1044, 59 L.R.A. 954.

The Mainz case was an action in assumpsit for breach of a promise to marry. After its commencement the plaintiff sued out a writ of mesne process directing the attachment of the real and personal estate of the defendant under the provisions of the then Gen.Laws of R.I., cap. 252, § 14.[3] After the attachment had been made of the defendant's real estate, the latter moved that said writ of attachment be dismissed and the service thereof set aside. This motion was denied by the trial court. On appeal, the Supreme Court reversed, holding at page 28 of 24 R.I., at page 1046 of 51 A.:

"The exceptional case hereinbefore referred to, in which an attachment was upheld in a case of this sort, is that of Morton v. Pearman, 23 Ga. 323. But that case is not pertinent here, because the statute under which the attachment was made authorized suits of attachment 'in all cases of money demands, whether arising *ex contractu* or *ex delicto.*' * * * But under our statute we are very clearly of the opinion that, in order to warrant an attachment, the cause of action must be based upon a contract where the damages, although they may be unliquidated, are yet susceptible of estimation and determination by a jury under the ordinary and well-understood commercial and business

3. This statute was the forerunner of § 10–5–2, and was couched in language which is in all material respects identical to that employed in § 10–5–2.

rules which apply to contracts proper."

I read the Mainz case as holding that a writ of attachment is available to a plaintiff when (1) the cause of action is ex contractu, and (2) the damages, although unliquidated, are susceptible of estimation and determination under the ordinary and well-understood commercial and business rules which apply to contracts proper.

■ In reaching this conclusion I am mindful of two settled principles of construction. The first of these is aptly stated in Investors Royalty Co. v. Market Trend Survey, Inc., 10 Cir., 1953, 206 F.2d 108, 39 A.L.R.2d 1260, certiorari denied 1953, 346 U.S. 909, 74 S.Ct. 239, 98 L.Ed. 406, where the Court of Appeals said at page 110:

> "An attachment statute will not be construed to cover claims arising ex delicto, unless it clearly appears from the language of the statute that the legislature intended to extend the remedy to such claims."

To the same effect, see McCall v. Superior Court, 1934, 1 Cal.2d 527, 36 P.2d 642, 95 A.L.R. 1019; Sunderlin v. Warner, 1926, 42 Idaho 479, 246 P. 1; Raver v. Webster, 1856, 3 Clarke, Iowa, 502. And see generally 4 Am.Jur., Attachment and Garnishment § 106. It is to be noted that the language of § 10–5–2 makes no express provision for attachment in actions ex delicto; and the complete statutory scheme, especially the provisions of § 10–5–6 (which authorizes the issuance of an original writ of attachment in tort actions against nonresidents), manifestly indicates a legislative intent that the remedy of attachment shall not be generally available under the provisions of § 10–5–2 when the cause of action is one sounding in tort.[4]

■ Secondly, it is clear that attachment statutes, in Rhode Island and elsewhere, are quite properly regarded as being in derogation of the common law and must therefore be strictly construed. Mitchell v. St. Maxent's Lessee, 1866, 4 Wall. 237, 18 L.Ed. 326; Massman v. Snyder, 5 Cir., 1930, 37 F.2d 825; Shoaff v. Gage, D.C.Neb.1958, 163 F.Supp. 179; Home Savings Bank v. Rolando, 1937, 57 R.I. 205, 189 A. 27; Levinson v. Seeman Bros., Inc., 1933, 166 A. 630, 11 N.J. Misc. 402. In the light of this principle there seems no warrant for construing § 10–5–2 to apply to claims arising ex delicto.

Accordingly, it is the nature of the cause of action which determines the applicability of § 10–5–2. This determination does not, as the plaintiff contends, conflict with the accepted fact that common law forms of action have been abolished in the federal courts. As was held in National Discount Corp. v. O'Mell, 6 Cir., 1952, 194 F.2d 452, at page 454:

> "Although under Rule 2, Rules of Civil Procedure, there is only one form of action, it is often necessary for the Court to consider the nature of the action in order to determine the proper procedure or the nature or extent of the relief to which the plaintiff may be entitled."

In this connection, see also Peitzman v. City of Illmo, 8 Cir., 1944, 141 F.2d 956.

■ The nature of the cause of action is to be determined from the allegations of the complaint viewed as a whole, and not from the prayer for relief. It is the duty of the Court in making this determination to look to the entire substance of the pleading. If it appears that a tort constitutes the gravamen of the complaint, the nature of the action is not changed by allegations in regard to the existence of a breach of contract or the existence of a contractual relationship or the inclusion in the complaint of particular prayers for relief. Aleutco Corp. v. United States, 3 Cir., 1957, 244 F.2d 674; National Discount Corp v.

---

4. I am also prepared to take judicial notice of the widespread acquiescence of the bar of Rhode Island in this construction of § 10–5–2. Indeed, in its brief the plaintiff concedes that the bar as a whole has long assumed that attachment is available in actions ex delicto only where the defendant is a nonresident.

O'Mell, supra; Parker State Bank v. Pennington, 8 Cir., 1925, 9 F.2d 966; Garden Homes, Inc. v. Mason, D.C.Mass. 1956, 143 F.Supp. 144; Babb v. Paul Revere Life Ins. Co., D.C.S.C.1952, 102 F.Supp. 247; Good v. Hartford Accident & Indemnity Co., D.C.S.C.1941, 39 F. Supp. 475; cf. First Nat. Bank of Colorado Springs v. McGuire, 7 Cir., 1950, 184 F.2d 620. And see generally 1 C.J.S. Actions § 46.

The question thus becomes—does the complaint state a cause of action ex contractu or ex delicto? As I have previously indicated, the complaint here is skeletal and is closely patterned on the language of 40 U.S.C.A. § 489(b), hereinbefore set forth. Construed most favorably to the plaintiff, said complaint may fairly be read as alleging three distinct claims, viz.: (1) that the defendants used and engaged in a fraudulent trick, scheme and device for the purpose of obtaining surplus property from the United States; (2) that the defendants entered into an agreement, combination and conspiracy to use and engage in a fraudulent trick, scheme and device for the purpose aforesaid; and (3) that the defendants wrongfully obtained possession of property of the United States and converted it to their own use.

In my judgment the claims asserted in the complaint are clearly ex delicto. Apparently by way of anticipation that this might be my determination, the plaintiff contends that even though the complaint states only causes of action sounding in tort, it may waive the torts and sue on an implied contract; and that an attachment is available in such an action. In this connection, it my be noted that there is no decision of the Supreme Court of Rhode Island on the question of whether the provisions of § 10–5–2 would afford the remedy of attachment in an action founded on such a legal fiction. There is, moreover, a clear split in the authorities as to whether an action on a contract implied by law falls within the purview of an attachment statute which applies only to actions ex contractu.

Compare, e. g., McCall v. Superior Court, supra, and State ex rel. American Piano Co. v. Superior Court, 1919, 105 Wash. 676, 178 P. 827 with Sonnesyn v. Akin, 1903, 12 N.D. 227, 97 N.W. 557 and Baxter v. Nash, 1897, 70 Minn. 20, 72 N.W. 799. Furthermore, it is far from clear that waiver of the torts would be permissible in respect to the acts alleged in the complaint. Compare Delta Theaters, Inc. v. Paramount Pictures, Inc., D.C.La. 1958, 158 F.Supp. 644; Whipple v. Stephens, 1904, 25 R.I. 563, 57 A. 375.

It is, however, unnecessary for me to pass upon these last contentions of the plaintiff. If a right to waive said torts exists here, no such waiver has in fact been set up by the plaintiff in its complaint.

In conclusion, I find that said writ of attachment was improperly issued, and that the defendants' motion to quash said writ and to dissolve the attachments made pursuant thereto must be, and it hereby is, granted.