**Joan HATCH, as administratrix of the Estate of Kristen Hatch, Plaintiff,**

v.

**Edward O'BRIEN and BZB Enterprises, Inc. d/b/a Parente's Family Restaurant, Defendants.**

**No. Civ. A. 90–0499L.**

United States District Court,
D. Rhode Island.

Sept. 25, 1991.

Matthew F. Medeiros, Genevieve M. Domenico, Flanders & Medeiros, Inc., Providence, R.I., Nelson G. Apjohn, Michael J. Engelberg, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Leonard A. Kiernan, Thomas C. Plunkett, Kiernan Plunkett & Woodbine, Kevin M. Cain, Patrick J. Quinlan, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motion of defendant Edward O'Brien ("O'Brien") for dissolution of a prejudgment attachment imposed upon his real estate by order of this Court on March 20, 1991. Plaintiff Joan Hatch ("Hatch") is suing O'Brien to recover pecuniary and other damages pursuant to the Rhode Island Wrongful Death Act, R.I.Gen.Laws §§ 10–7–1 to –14. The Court concludes that it properly allowed the attachment to issue in the circumstances of this case.

### I. BACKGROUND

Hatch, a citizen of Massachusetts, alleges that on the evening of April 16, 1990, O'Brien negligently and recklessly operated his motor vehicle while intoxicated, striking and killing her daughter, the decedent, Kristen Hatch, a student at Bryant College, while she was jogging on the side of Route 116 in Smithfield, Rhode Island. Two Breathalyzer tests subsequently administered to O'Brien resulted in readings of 0.22% and 0.23%, more than twice the legal limit for intoxication. R.I. Gen.Laws § 31–27–2(b)(1).

The Rhode Island Wrongful Death Act states that the minimum amount a plaintiff may recover in a wrongful death action is $100,000.00. R.I.Gen.Laws § 10–7–2. In response to Hatch's Interrogatory No. 17 O'Brien admitted that he has no liability insurance. Hatch, therefore, asked this Court to authorize a prejudgment attachment on O'Brien's only known asset, his condominium, in order to secure any judgment she might obtain against him. The condominium has an assessed value of $37,840.00 and a mortgage in the principal amount of $31,000.00. After a hearing at which it was found that there was a likeli-

hood that plaintiff would secure a judgment against O'Brien and that plaintiff had a need for security, the Court allowed an attachment in an amount not to exceed $100,000.00.

O'Brien later filed this motion, contending that the attachment should be dissolved because there is no applicable law authorizing an attachment in this kind of a case, i.e., a tort case.

After having heard arguments on the motion for dissolution of the attachment, the Court took the matter under advisement. The motion is now in order for decision.

## II. DISCUSSION

Rule 64 of the Federal Rules of Civil Procedure provides that attachments in district court "are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought," subject to the qualification that "any existing statute of the United States governs to the extent to which it is applicable...." As there is no applicable statute of the United States allowing prejudgment attachment in these circumstances, the Court must determine the validity of the attachment by examining the law of Rhode Island as it exists presently.

Attachments under Rhode Island law are governed by Rule 4(j) of the Rhode Island Superior Court Rules of Civil Procedure and by the Rhode Island Attachment Act, R.I.Gen.Laws §§ 10-5-1 to -45, particularly § 10-5-2. The text of § 10-5-2 and Rule 4(j) is appended for ready reference. Sections 10-5-5 and 10-5-6 authorize prejudgment attachments in a proceeding in equity or if the defendant in a tort case is an out-of-state resident owning property in Rhode Island. Neither of those sections is applicable to this case: this is an action at law and O'Brien is a resident of Rhode Island.

It is necessary to examine prior Rhode Island case law to get an historical perspective before undertaking a discussion of Rule 4(j) and § 10-5-2 as they presently exist.

In *Mainz v. Lederer*, 24 R.I. 23, 51 A. 1044 (1902), the Rhode Island Supreme Court determined that "in order to warrant an attachment the cause of action must be based upon a contract where the damages, although they may be unliquidated, are yet susceptible of estimation and determination by a jury under the ordinary and well-understood commercial and business rules which apply to contracts proper." *Id.* at 28, 51 A. at 1046. In so ruling, the Court determined that not all contract actions would justify an attachment. For example, an attachment would not be permitted in an action for a breach of promise to marry because the damages for such a breach "are governed almost exclusively by those rules which are applicable to tort actions, and rest almost absolutely in the judgment of the jury." *Id.* at 25, 51 A. at 1045. Therefore, pre-1972 Rhode Island law was well established: the propriety of a prejudgment attachment was to be determined solely by the nature of the cause of action, and such an attachment would not be allowed in a tort action. *United States v. J. Tirocchi & Sons, Inc.*, 180 F.Supp. 645, 650 (D.R.I.1960).

The law in Rhode Island, however, changed significantly in the year 1972. Before that time the Rhode Island attachment statutes required notice and a judicial hearing prior to issuance of a writ of attachment only in cases in equity. In cases at law a plaintiff's attorney merely filled out a form writ and affidavit and delivered them to the sheriff for service, deciding for himself or herself what property to attach and in what amount. The hearing procedure in a suit in equity provided the court with discretion to attach only that amount of the property the court found necessary. *Marsh v. Moore*, 52 R.I. 458, 461, 161 A. 227, 228 (1932).

In 1972 the United States Supreme Court decided the seminal case of *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In *Fuentes*, the Supreme Court held that the due process requirement of notice and a hearing prior to the taking of property on a writ of replevin was necessary in the absence of extraordinary cir-

cumstances. In light of that decision this Court determined that the Rhode Island prejudgment attachment procedure was unconstitutional because it permitted a plaintiff in a case at law to attach a defendant's property without notice and hearing. *McClellan v. Commercial Credit Corp.,* 350 F.Supp. 1013, 1014 (D.R.I.1972), *aff'd sub nom. Georges v. McClellan,* 409 U.S. 1120, 93 S.Ct. 935, 35 L.Ed.2d 253 (1973). Subsequently, in 1973 the Rhode Island General Assembly revised § 10–5–2 to require notice and a judicial hearing prior to the execution of a prejudgment attachment in all actions, thereby bringing the Rhode Island attachment procedures into line with the *Fuentes* decision. *See* 1973 R.I.Pub. Laws, Chap. 109.

Even before then, the Rhode Island Superior Court (with the approval of the Supreme Court) adopted the 1972 amendment to Rule 4(j) of the Rhode Island Superior Court Rules of Civil Procedure to comply with *Fuentes,* and obliterated the distinction between cases at law and cases in equity and also between cases brought on contract and in tort. (This writer had a hand in the drafting and adoption of that amendment.) The amendment provides that a prejudgment writ of attachment must be submitted to the court along with a motion for its issuance and further states that "[t]he motion shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs." Rhode Island Super.Ct.R.Civ.P. 4(j)(2). The Rule applies on its face to all civil actions whether based on contract or in tort.

■■■ It is clear, then, that the pre–1972 procedural differences regarding attachment in cases at law and cases in equity and cases on contract or in tort have been eliminated completely. There is now but one procedure requiring notice and hearing in all civil actions before an attachment may issue. In light of these recent developments, therefore, this Court concludes

that attachments in tort cases may be allowed if the two requirements of Rule 4(j)(3) are satisfied, i.e., probability of success and the need for security. Section 10–5–2 as presently drafted likewise does not specifically preclude attachment in tort cases. It is true, however, that few tort cases will be deemed appropriate for attachment because the outcome on the issue of liability cannot be accurately forecasted and the amount of damages involved is ordinarily uncertain. Although the case at hand is based in tort, it is an exceptional case in that it is probable that the plaintiff will prevail on the issue of liability and the minimum amount she may recover is $100,-000.00, as specified by § 10–7–2 of the Rhode Island Wrongful Death Act. There is no reason, therefore, to disallow an attachment in a tort case such as this.

The Court has already determined that there is a probability that a judgment will be rendered in favor of Hatch. The Breathalyzer tests showed that O'Brien's alcohol level was over the legal limit for intoxication shortly after the accident. Also, the Court has ruled that there is a need for furnishing Hatch security in order to satisfy the judgment because O'Brien has admitted that he has no liability insurance. Furthermore, the anticipated amount of judgment in this case—at least $100,000.00—exceeds the assessed value of the condominium. *See Katz Agency, Inc. v. Evening News Ass'n,* 514 F.Supp. 423, 429 (S.D.N.Y.1981) (New York law allows attachment for security purposes only when plaintiff may have trouble enforcing judgment), *aff'd,* 705 F.2d 20 (2d Cir.1983); *Bowman v. Dussault,* 425 A.2d 1325, 1328–29 (Me.1981) (attachment would not lie where plaintiff failed to allege specific facts regarding measure of damages although reasonable likelihood of judgment for plaintiff). In addition, the Rhode Island Supreme Court has held as a general rule that "orders granting prejudgment attachments of real estate ... involve no threat of hardship or injury" to defendants but "merely prevent defendants from disposing of their real property before the trial court can determine whether they are

liable." *Cull v. Vadnais,* 122 R.I. 249, 254–55, 406 A.2d 1241, 1244 (R.I.1979).

### III. CONCLUSION AND ORDER

The Court is satisfied that Rhode Island law permits a trial court to authorize an attachment in a tort case of this kind. The Court has found that the requirements of Rule 4(j)(3) have been met. Therefore, the motion for issuance of a prejudgment writ of attachment in this case was properly granted on March 20, 1991. Accordingly, the defendant's motion to dissolve the attachment hereby is denied.

It is so ordered:

### APPENDIX A

R.I.G.L. § 10–5–2. *Procedure.*

(a) A court having jurisdiction over a defendant or his assets, including his personal estate or real estate, may authorize a plaintiff to attach same, or any part thereof, after hearing on a motion to attach, notice of which has been given to the defendant as herein provided. At the time of the commencement of the action, or at any time thereafter, a plaintiff must file a motion in said court for authority to attach said defendant's assets, including his personal or real estate, and the said motion must state the day, time and place of hearing and a copy must be served by the process server on the defendant or by leaving it at his last and usual place of abode with some person there at least five (5) days before the fixed date of hearing.

(b) If the defendant does not reside in the state of Rhode Island, service of said motion shall be made upon him by mailing a copy of the said motion to attach, by certified mail, to his last known address and, if service is made in this manner, the plaintiff or his attorney must attach the sender's receipt to an affidavit of compliance with this section by the plaintiff or his attorney and filing it with the case in said court.

(c) If the plaintiff after diligent search and by affidavit avers that he does not know of the defendant's address, service on the defendant of the motion to attach may after order of the court be made by publication in some public newspaper, once, published in the town, city or county where the said defendant's assets are situated. If there be no public newspaper published in the town, city or county where the defendant's assets are situated, then in some public newspaper published in the city of Providence. Provided, however, that in all actions where the plaintiff's claim against the defendant has been reduced to a judgment, the defendant's assets, including his personal estate and real estate, may be attached and may be subject to trustee process as set out in chapter 17 of this title in the same action in which the judgment has been entered.

### APPENDIX B

Rule 4(j) *Attachment and Trustee Process.*

(1) *Availability of Remedies.* In connection with the commencement of any action under these rules, attachment, including trustee process, shall be available to the extent and in the manner provided by law.

(2) *Writ of Attachment: Form.* The writ of attachment shall bear the signature or facsimile signature of the clerk, be under the seal of the court, contain the name of the court, the names and residences of the parties and the trustee, if any, and the date of the commencement of the action, be directed to the sheriffs of the several counties or their deputies, or to other officers authorized by law to serve the same, and command them to attach the goods or estate of the defendant to the value of the amount of the plaintiff's demand for judgment, together with a reasonable allowance for interest and costs, and to make due return of their doings thereon.

(3) *Same: Issuance.* The writ of attachment may be procured in blank from the clerk, shall be filled out by the plaintiff's attorney as provided in paragraph (2) of this subdivision, and shall be submitted to the court with a motion for its issuance. The motion shall be granted

only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs. A motion hereunder shall not be granted ex parte. Security may be required in connection with issuance of any writ of attachment. A surety upon a bond or undertaking hereunder shall be subject to the provisions of Rule 65(c).

(4) *Same: Service.* The plaintiff's attorney shall deliver to the officer making service a copy of the proposed writ of attachment together with a copy of the motion for its issuance and the notice of hearing thereof. When the summons and complaint are served upon the defendant as provided in [subdivisions (d) through (g) of this rule], the defendant shall also be served with a copy of the proposed writ of attachment and of the motion for its issuance with the notice of the hearing thereof. An attachment made after service of the summons and complaint shall be made as provided in paragraph (6) of this subdivision.

(5) *Attachment on Counterclaim, Cross–Claim, or Third–Party Complaint.* Attachment may be utilized by a party bringing a counterclaim, a cross-claim, or a third-party complaint in the same manner as upon an original claim.

(6) *Subsequent Attachment.* After service of the summons and complaint upon the defendant, attachment shall be available to the extent and in the manner provided by law, shall follow the form prescribed in paragraph (2) of this subdivision, and shall be issued in accordance with paragraph (3) of this subdivision. All papers shall be served upon the defendant in the manner provided for service of process under subdivisions (d) through (g) of this rule unless the defendant has appeared in the action, in which case service shall be made as provided in Rule 5(b).

(7) *Return of Service.* Upon service of a writ of attachment and copy thereof, the person making the service shall make his or her return as provided in subdivision (b) of this rule.