John T. MARTIN et al.

v.

LINCOLN BAR, INC. and
Michael Farnsworth.

No. 92–14–M.P.

Supreme Court of Rhode Island.

March 25, 1993.

Joseph G. Miller, Warwick, for plaintiffs.

Gerald Petros, Hinckley, Allen, Snyder & Comen, Hugh Moore, Jr., Hodosh, Spinella & Angelone, Providence, for defendants.

## OPINION

MURRAY, Justice.

This case comes before this court pursuant to a writ of certiorari filed by the plaintiff, John T. Martin, alleging that a Superior Court justice erred in denying his motion for a prejudgment writ of attachment on a piece of real estate owned by the defendant, Lincoln Bar, Inc. (Lincoln Bar). In addition, the plaintiff alleges that the Superior Court justice erred in denying his request for a temporary restraining order preventing Lincoln Bar from transferring this real estate. For the reasons set forth in this opinion, we deny the plaintiff's petition for certiorari.

The facts in this case are as follows. On December 22, 1986, Michael Farnsworth (Farnsworth), also a defendant in this case, operated a pickup truck owned by defendant Lincoln Bar and struck a vehicle owned by plaintiff's employer. This accident caused plaintiff serious and permanent injuries. The plaintiff thereafter sought recovery from Rumford Insurance Company (Rumford), the company that insured Lincoln Bar. Rumford provided Lincoln Bar with insurance coverage with a policy limit of $300,000. During the course of this litigation, Rumford became insolvent and the Rhode Island Insurers Insolvency Fund stepped in to assume Rumford's financial obligations. General Laws 1956 (1989 Reenactment) § 27–34–12 required plaintiff to proceed against his own insurance carrier prior to seeking compensation from the Rhode Island Insurers Insolvency Fund. Through compliance with this requirement, plaintiff received $350,000 from his own insurance carrier.

Notwithstanding this partial recovery, plaintiff continued to pursue a negligence action against Farnsworth and Lincoln Bar, alleging that plaintiff has incurred damages in excess of $750,000. The plaintiff's wife, Jean Martin, and plaintiff's two children joined in this action, seeking recovery for loss of consortium and loss of society.

Prior to trial plaintiff moved to attach real estate owned by Lincoln Bar. The plaintiff asserted that he has a strong likelihood of success on the merits and that if the court denies his motion for a prejudgment writ of attachment, plaintiff runs the risk of being unable to enforce his judgment against defendants. In addition, plaintiff sought a temporary restraining order under the Uniform Fraudulent Transfer Act, G.L.1956 (1992 Reenactment) chapter 16 of title 6, that would prevent Lincoln Bar from transferring the real estate. The trial justice denied both of these prejudgment motions. We address the propriety of these rulings on this petition for certiorari.

## I

·The first issue we consider is whether the trial justice erred in denying plaintiff's motion to attach the real estate owned by Lincoln Bar. Rhode Island law regarding the availability of the attachment remedy, and the procedure a party must follow in seeking to obtain a writ of attachment, has developed dramatically over the last twenty-five years, and it is helpful to begin with a review of this development.

Prior to 1972, Rhode Island had both case law and statutory law regarding writs of attachment. Three pre–1972 statutory provisions are pertinent to our review. General Laws 1956 (1969 Reenactment) § 10–5–2 governed the procedure a party must follow in seeking a writ of attachment. This provision simply required the moving party to file an affidavit, demonstrating "that the plaintiff has a just claim against the defendant, that is due, upon which the plaintiff expects to recover in such action a sum sufficient to give jurisdiction to the court to which such writ is returnable." This 1969 version of § 10–5–2 did not require notice to a defendant and a hearing before a court attached the property of a defendant.

A second pre–1972 statutory provision, G.L.1956 (1969 Reenactment) § 10–5–5, governs attachments in suits based in equity.

A third pre–1972 provision, G.L.1956 (1969 Reenactment) § 10–5–6, governed suits based in tort filed against nonresidents of Rhode Island. This provision, still in effect today, authorizes a court to issue a writ of attachment against a nonresident tort defendant whenever "the plaintiff has a just cause of action against the defendant, upon which the plaintiff expects to recover a sum sufficient to give jurisdiction to the court."

Pre–1972 Rhode Island case law significantly supplemented this statutory law. Most importantly, this court refused to allow the issuance of writs of attachment in cases arising in tort because the extent of damages in tort cases cannot be reduced to a sum that is certain prior to the return of a jury verdict. *Marsh v. Moore*, 52 R.I. 458, 459, 161 A. 227, 228 (1932); *Mainz v. Lederer*, 24 R.I. 23, 25–26, 51 A. 1044, 1045 (1902). In *United States v. J. Tirocchi & Sons, Inc.*, 180 F.Supp. 645 (D.R.I.1960), the Federal District Court in Rhode Island, interpreting Rhode Island law, reaffirmed this principle by holding that in order to qualify for a writ of attachment, a moving party must demonstrate (1) that the cause of action sounds in contract and (2) that the damages "are susceptible of estimation and determination under the ordinary and well-understood commercial and business rules which apply to contracts proper." *Id.* at 650.

The court in *J. Tirocchi & Sons* also concluded that Rhode Island statutory law compelled courts to deny prejudgment writs of attachment in tort cases filed against in-state defendants. The court stated:

"It is to be noted that the language of § 10–5–2 makes no express provision for attachment in actions ex delicto [in tort]; and the complete statutory scheme, especially the provisions of § 10–5–6 (which authorized the issuance of an original writ of attachment in tort actions against nonresidents), manifestly indicates a legislative intent that the remedy of attachment shall not be generally available under the provisions of § 10–5–2 when the cause of action is one sounding in tort." 180 F. Supp. at 650.

The court in *J. Tirocchi & Sons* reasoned that if the General Assembly saw fit to create an attachment remedy in tort cases filed against nonresidents, by negative implication the General Assembly intended to prohibit the attachment remedy in actions against in-state tort defendants. *Id.*

In 1972 the United States Supreme Court decided *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct.1983, 32 L.Ed.2d 556 (1972). In *Fuentes* the Court held that the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution required notice and a hearing prior to the issuance of a writ of replevin, absent extraordinary circumstances. *Id.* at 96–97, 92 S.Ct. at 2002–03, 32 L.Ed.2d at 579. In light of *Fuentes* the Federal District Court

in Rhode Island found Rhode Island's attachment procedures unconstitutional because the 1969 version of § 10–5–2 permitted a plaintiff to obtain a prejudgment writ of attachment without providing a defendant with notice and a proper hearing. *McClellan v. Commercial Credit Corp.*, 350 F.Supp. 1013, 1014 (D.R.I.1972), *aff'd sub nom.*, *Georges v. McClellan*, 409 U.S. 1120, 93 S.Ct. 935, 35 L.Ed.2d 253 (1973).

Rhode Island authorities responded to this development in two ways. In 1973 the General Assembly amended § 10–5–2 and provided a procedure that would meet the requirements of due process. Public Laws 1973, ch. 109, § 1. The 1973 version of § 10–5–2 read in pertinent part:

"At the time of the commencement of the action, or at any time thereafter, a plaintiff must file a motion in said court for authority to attach said defendant's assets, including his personal or real estate, and the said motion must state the day, time and place of hearing and a copy must be served by the process server on the defendant or by leaving it at his last and usual place of abode with some person there at least five (5) days before the fixed date hearing." [1]

Notably, this 1973 amendment to § 10–5–2 did not alter the range of cases in which attachment was available. The distinction between tort and contract cases still remained. The 1973 version of § 10–5–2 only added a procedure to ensure that defendants received advance notice and a hearing before a court allowed a plaintiff to attach a defendant's property.

In addition to this action by the General Assembly, the Rhode Island Superior Court, with the approval of the Rhode Island Supreme Court, adopted a 1972 amendment to Rule 4(j) of the Superior Court Rules of Civil Procedure. This 1972 amendment, as amended by the court December 6, 1972, effective December 20, 1972, states in pertinent part:

"Attachment and Trustee Process.

(1) *Availability of Remedies.* In connection with the commencement of any action under these rules, attachment, including trustee process, shall be available to the extent and in the manner provided by law.

\*    \*    \*    \*    \*    \*

(3) *Same: Issuance.* The writ of attachment may be procured in blank from the clerk, shall be filled out by the plaintiff's attorney as provided in paragraph (2) of this subdivision, and shall be submitted to the court with a motion for its issuance. The motion shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interests and costs. A motion hereunder shall not be granted ex parte. Security may be required in connection with issuance of any writ of attachment. A surety upon a bond or undertaking hereunder shall be subject to the provisions of Rule 65(c)."

It is absolutely clear that Rule 4(j) placed a greater burden on a party seeking to attach property. The moving party must demonstrate at a hearing that the party has a likelihood of success on the merits. In addition, the moving party must demonstrate the need for security. The Reporter's Notes to this 1972 amendment indicate that the drafters of this amendment intended to bring Rhode Island attachment procedure in line with the Supreme Court decision in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

The more difficult question is whether this 1972 amendment to Rule 4(j) also abolished the distinction between contract and tort cases and thereby made prejudgment attachment an available remedy in tort actions against in-state defendants. The Federal District Court in Rhode Island, interpreting Rhode Island law, addressed this issue in *Hatch v. O'Brien*, 772 F.Supp. 1326 (D.R.I.1991). In *Hatch* the plaintiff

---

1. The General Assembly amended G.L.1956 (1969 Reenactment) § 10–5–2 in 1984, P.L.1984, ch. 357, § 2, and again in 1986, P.L.1986, ch.   320, § 1, but made only minor alterations with these amendments.

sued the defendant in a wrongful-death action, and the plaintiff sought a prejudgment writ of attachment on the defendant's condominium. *Id.* at 1326–27. The court noted that Rule 4(j)(3), which requires a plaintiff to demonstrate a likelihood of success on the merits and the need for security, applies on its face to all civil actions. *Id.* at 1328. The court concluded that since Rule 4(j) did not distinguish between tort and contract cases, attachment was an available remedy in all tort cases if the plaintiff could meet the two-pronged test of proving the likelihood of success on the merits and the need for security. *Id.* at 1329.

It is well-settled law that a federal court, interpreting a state statute or state rule of civil procedure, must defer to the highest court of the state as the arbiter of state law. *See Donahue v. Rhode Island Department of Mental Health,* 632 F.Supp. 1456, 1478 (D.R.I.1986). This task becomes difficult when, as in this case, the state's highest court has not interpreted the rule or statute in question prior to the case coming before the federal court. In such a circumstance the federal court must predict how the state's highest court would rule on the issue, taking into account the state court's precedents and the "better reasoned authorities" on the subject. *Ryan v. Royal Insurance Co. of America,* 916 F.2d 731, 739 (1st Cir.1990).

In the present case the Federal District Court of Rhode Island in *Hatch* believed that this court would interpret Rule 4(j) as destroying the distinction between tort and contract cases for the purpose of determining the availability of the attachment remedy. Our review of the text of Rule 4(j) leads us to a contrary conclusion—that Rule 4(j) did not change the law of Rhode Island so as to make attachment available in tort cases involving a Rhode Island defendant.

The first subsection to Rule 4(j) states:

"(1) *Availability of Remedies.* In connection with the commencement of any action under these rules, attachment, including trustee process, *shall be avail-*

*able to the extent and in the manner provided by law."* (Emphasis added.)

We believe that the language "shall be available to the extent and in the manner provided by law" indicates that the drafters of Rule 4(j) did not intend to alter the range of cases in which the attachment remedy is available. We believe Rule 4(j) raised the burden of proof in those cases wherein attachment was already a remedy "provided by law" and requires plaintiffs in that range of cases to prove, at a hearing, a likelihood of success on the merits and the need for security.

Under the present statutory scheme attachment is not a remedy "provided by law" against tort defendants who reside in Rhode Island. It is true that chapter 5 of title 10 of the General Laws, which provides for the attachment remedy, neither explicitly allows nor explicitly rejects attachment in tort cases in which the defendant is a resident of Rhode Island. Section 10–5–6, however, provides that attachment is a remedy in tort actions against nonresidents. As noted earlier in this opinion, Rhode Island courts have interpreted this statutory scheme as manifesting a legislative intent to prohibit attachment in tort cases filed against in-state defendants. *J. Tirocchi & Sons,* 180 F.Supp. at 650. We conclude that Rule 4(j) did not extinguish this principle of law.

Although we reach a different conclusion from the Federal District Court of Rhode Island on the impact of Rule 4(j) on the availability of attachment in tort cases, we understand that the federal court had compelling reasons to allow for attachment in *Hatch v. O'Brien,* 772 F.Supp. at 1326. The Legislatures and courts that prohibit attachments in tort cases do so because it is difficult to prove a need for security in light of the uncertain amount of damages that a jury is likely to award to a plaintiff. The underlying cause of action in *Hatch,* however, was a wrongful-death action wherein the defendant, driving while intoxicated, struck and killed the decedent. *Id.* at 1328. There was an overwhelming likelihood of success on the merits. Moreover, Rhode Island's wrongful-death statute pro-

vides for a minimum recovery of $100,000. General Laws 1956 (1985 Reenactment) § 10–7–2, as amended by P.L.1989, ch. 525, § 1. The plaintiff in *Hatch* sought to attach property valued at less than $100,000. 772 F.Supp. at 1326. Thus, when one applies the underlying principles to these rules, it made sense for the federal court to allow an attachment because there was a likelihood of success on the merits and, even though *Hatch* was a tort case, the damages were certain, at least up to the $100,000 statutory limit.

■ This logic cannot, however, justify this court's rewriting of Rhode Island's statutory attachment scheme to provide for attachment against in-state tort defendants when the General Assembly has manifested a contrary legislative intent. Courts traditionally have viewed attachment statutes as being in derogation of the common law and, therefore, subject to strict construction by courts. *J. Tirocchi & Sons*, 180 F.Supp. at 650. Supporting this view, the United States Court of Appeals for the Tenth Circuit wrote:

"An attachment statute will not be construed to cover claims arising [in tort], unless it clearly appears from the language of the statute that the legislature intended to extend the remedy to such claims." *Investors Royalty Co. v. Market Trend Survey, Inc.*, 206 F.2d 108, 110 (10th Cir.), *cert. denied*, 346 U.S. 909, 74 S. Ct. 239, 98 L. Ed. 406 (1953).

Absent an explicit direction from the General Assembly, we decline to expand the attachment remedy to cover tort cases wherein attachment is sought against a Rhode Island resident. In the instant case the cause of action arises in tort, and plaintiff sought to attach the real estate of Lincoln Bar, a domestic Rhode Island corporation. Accordingly the trial justice correctly denied plaintiff's motion to attach defendant's property.[2]

II

■ The second issue we consider is whether plaintiff is entitled to a temporary restraining order preventing Lincoln Bar from transferring the real estate. In order to qualify for a temporary restraining order, the moving party must demonstrate (1) that it will probably succeed on the merits of its claim, (2) that the party will suffer immediate irreparable harm absent injunctive relief, (3) that the moving party has no adequate remedy at law, and (4) taking into account the public interest, the balancing of the equities favors the granting of the temporary restraining order. *Silva v. East Providence Housing Authority*, 390 F.Supp. 691, 695 (D.R.I.1975). *See also In re State Employee's Unions*, 587 A.2d 919, 925 (R.I.1991) (discussing the requirements for the issuance of a permanent injunction).

In this case plaintiff has failed to demonstrate a likelihood of success on the merits of his case. The first and obvious question is, what are the merits of plaintiff's case that justify the imposition of a temporary restraining order? The plaintiff contends that he is a creditor with a claim under the Uniform Fraudulent Transfer Act (UFTA), G.L.1956 (1992 Reenactment) chapter 16 of title 6, and that if in the future Lincoln Bar transferred the real estate, it would be fraudulent in regard to him. The plaintiff argues that even though Lincoln Bar has not yet transferred the property, the UFTA authorizes a court to issue a temporary restraining order to prevent a transfer that would be fraudulent if made in the future.

Our reading of § 6–16–7, the remedies provision of the UFTA, does not support plaintiff's interpretation of the statute. A prerequisite for obtaining relief under § 6–16–7 is that the defendant "transfer" the property. Section 6–16–1(1) defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an

---

**2.** We note that even if we were to apply the Super. R. Civ. P. 4(j)(3) test to plaintiff's case, plaintiff would not be entitled to an attachment because plaintiff has failed to demonstrate a need for security. In the instant action the amount of damages that a jury would award is unclear and, therefore, it is uncertain how much security, if any, plaintiff requires. Moreover plaintiff has failed to show any behavior on the part of Lincoln Bar that indicates that the real estate will not be available to satisfy a judgment if and when a jury awards damages.

asset or an interest in an asset." In this case no transfer has occurred, and thus plaintiff has not triggered the remedy provision of the UFTA.

Pursuant to § 6–16–7(a)(3)(C) of the UFTA, it may also be possible for a plaintiff to obtain a temporary restraining order if no transfer has occurred—if the plaintiff can prove that a fraudulent transfer is imminent. However, in this case plaintiff has failed to prove that Lincoln Bar is planning to transfer the real estate fraudulently. Without this proof plaintiff cannot use the UFTA as a basis upon which to predicate a claim for a temporary restraining order.

For the same reasons plaintiff has failed to prove that he will suffer immediate and irreparable harm in the absence of the issuance of a temporary restraining order. There was no evidence before the Superior Court justice demonstrating that Lincoln Bar planned to transfer or in any way to secrete the real estate in order to defraud plaintiff and thereby prevent the real property from being available to satisfy plaintiff's potential judgment.

Having found that the plaintiff has failed to meet the first two requirements for a claim for a temporary restraining order, we need not examine the remaining elements of the test set forth in *Silva v. East Providence Housing Authority*, 390 F.Supp. at 695. We deny the plaintiff's claim for injunctive relief.

Accordingly we deny the petition for certiorari and quash the writ heretofore issued. We affirm the orders of the Superior Court and remand the case to Superior Court with our decision endorsed thereon.