Arlene D. LOMBARDI, d.b.a.
A.D.L. Realty

v.

RHODE ISLAND INSURERS'
INSOLVENCY FUND.

No. 98–542–Appeal.

Supreme Court of Rhode Island.

May 25, 2000.

Douglas H. Smith, Providence, for Plaintiff.

William A. Poore, Christopher J. O'Connor, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, Rhode Island Insurers' Insolvency Fund (hereinafter defendant or the Fund), appeals from a Superior Court judgment in favor of the plaintiff, Arlene D. Lombardi (plaintiff or Lombardi), declaring the Fund liable for the applicable limits of coverage under an insurance policy in the amount of $79,500, and denying a motion to dismiss filed by defendant alleging that plaintiff was not the real party in interest. This case came before the Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument.

Lombardi was the owner of a two-family dwelling located on Gendron Street in West Warwick (hereinafter the premises) when, in November of 1990, the building was significantly damaged by fire. Lombardi insured the premises the previous January through a policy issued by American Universal Insurance Group (hereinafter American). The limits of insurance coverage under the policy were $75,000 for

property loss, plus $5,000 for debris removal, minus a $500 deductible. The effective dates of the policy were January 26, 1990, through January 25, 1991. At the time of the fire, Colonial Bank (Colonial) held a mortgage on the premises in accordance with a promissory note and mortgage given by Lombardi in the amount of $75,000, for which approximately $68,540 remained outstanding. In turn, Colonial was the scheduled loss payee under the terms of the policy.

As a result of the fire, the premises incurred property damage in excess of the policy limits. On January 8, 1991, the insurance carrier, American, was declared insolvent by a justice of the Superior Court. On October 24, 1991, Lombardi filed this action against American, alleging breach of contract. Thereafter, Colonial was placed into receivership and its assets came under the control of the Resolution Trust Company (hereinafter Resolution). Included in Colonial's assets was an insurance policy in the amount of $1,000,000 issued by Lloyd's of London (Lloyd's) that purportedly covered this loss. Because of American's insolvency, the parties stipulated that in accordance with G.L.1956 chapter 34 of title 27, the Fund [1] be substituted as a party defendant for both American and Guaranteed Fund Management.

On May 14, 1998, this matter went on for trial before a justice of the Superior Court sitting without a jury. After making numerous findings of fact, the trial justice, in reliance upon *Greater Providence Trust Co. v. Nationwide Mutual Fire Insurance Co.*, 116 R.I. 268, 355 A.2d 718 (1976), held that the mortgagee's clause under the standard Rhode Island fire insurance contract creates two separate and independent contracts, one between the mortgagor and the insurer, and the other between the mortgagee and the insurer, and therefore Lombardi had a separate and independent cause of action against her insolvent insurer for breach of contract. The trial justice ordered the Fund to pay Lombardi the sum of $79,500, and subsequently denied a motion to dismiss by defendant on the ground that Lombardi was not the real party in interest. The defendant has appealed.

Before this Court, defendant argued, in reliance on a clause in the insurance contract that lists Colonial as the loss payee, that Lombardi was not the real party in interest and that her claim should be dismissed pursuant to Rule 17 of the Superior Court Rules of Civil Procedure, which requires that "[e]very action shall be prosecuted in the name of the real party in interest." The defendant further argued that although Colonial is the appropriate payee under the policy, Colonial must first exhaust its own insurance policies before it is entitled to recovery, pursuant to § 27–34–12(a).[2] The defendant contended that because Colonial has $1,000,000 available coverage from Lloyd's that must first be exhausted, the existence of this insurance coverage precludes any claim that Colonial may otherwise have had against the Fund. Before reaching the merits of whether Lombardi is a real party in interest, we shall first address this contention.

This Court recognized in *Martin v. Lincoln Bar, Inc.*, 622 A.2d 464, 465 (R.I. 1993), that pursuant to § 27–34–12, a

---

1. The Rhode Island Insurers' Insolvency Fund is a nonprofit corporate entity established by the Rhode Island Insurers' Insolvency Fund Act, G.L.1956 chapter 34 of title 27. The Fund is supported by assessments upon liability-insurance carriers that do business within the state. *See Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurers' Insolvency Fund,* 703 A.2d 1097 (R.I.1997).

2. Section 27–34–12(a) provides that:

"*[A]ny person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his or her right under that policy.* Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under the insurance policy." (Emphases added.)

plaintiff is required to proceed against his or her own insurance carrier prior to seeking compensation from the Fund. However, in *Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurers' Insolvency Fund,* 703 A.2d 1097, 1100 (R.I.1997), we declined to extend this principle to require plaintiffs to exhaust potential third-party-liability coverage available to co-defendants who may also be liable to that plaintiff. We noted the purpose of the Fund is "to provide a mechanism for the payment of covered claims under certain insurance policies 'to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to create an entity to assess the cost of the protection and distribute it equitably among member insurers.'" *Id.* (quoting § 27–34–2). We determined that the Fund is "obliged to assume all the obligations that would have been incumbent upon the insolvent insurer had it not become unable to discharge these responsibilities," *id.,* and that were we to adopt the position advocated by the Fund, the Fund would be relieved from participating in settlement negotiations, thus insulating itself from suits for contribution but failing to protect its own insured and exposing its insured to the possibility of significant excess liability. *Id.* at 1102. The paramount responsibility of an insurer is to at all times act in the best interests of its insured to protect the insured from loss and excess liability. Accordingly, the sound public policy underlying the statute that created the Fund and the policy considerations that motivated its adoption led us in *Medical Malpractice* to reject the posture adopted by the Fund. 703 A.2d at 1102. We concluded that this outcome has the potential to delay settlements and to encourage needless litigation, eventualities that contravened the purpose of the statute. *Id.*

■ In the case at bar, the Fund has attempted to distinguish *Medical Malpractice* and has argued that we should extend the statute to require an insured whose insurer has been declared insolvent to look to any outstanding policies of the insured's creditor merely because the creditor is the loss payee under the policy. In light of the policy considerations underlying the statute, we decline this invitation. We refuse to require an insured who has made timely premium payments, and who suffers a loss under the policy, to first exhaust the insurance of his or her creditor or mortgagee where the insured is a stranger to those relationships, will derive no benefit from the creditor's policies, and will remain liable on the original promissory note. Clearly, this is not what the Legislature intended when it enacted a statute that mandates that the Fund protect, at all times, the interests of its insured as though it were a solvent insurer. *Medical Malpractice,* 703 A.2d at 1102.

■ Further, we cannot agree with defendant's contention that Lombardi is not the real party in interest. At the time of the fire, Lombardi was insured for up to $79,500, and her indebtedness under the note was approximately $68,540. Thus, a difference of approximately $11,000 was due and owing to Lombardi after a distribution of $68,540 to Colonial. Hence, it is clear to us that Lombardi maintained a substantial interest in the policy that remained separate and apart from that of her lender. At oral argument, plaintiff conceded that some six years later, the balance on the indebtedness exceeded the policy limits, and that Lombardi defaulted on the note because of her inability to continue making payments after losing the income that the property produced. The Fund therefore contends, that any recovery on the policy is clearly for the benefit of Colonial, and therefore Colonial is the proper "real party in interest." However, we note that at the time of the loss, Lombardi was not in default, and therefore her interest in the insurance proceeds at that time was both real and significant. Although Colonial may have been the loss payee under the policy, Lombardi's inter-

ests were not forfeited simply because her name did not appear as a "loss payee" in the contract.

Accordingly, although we are satisfied that the trial justice was correct in finding that Lombardi was a "real party in interest," we also recognize that Colonial, as the scheduled loss payee, also possessed an interest in the proceeds, and although Colonial was placed in receivership, its assets came under the control of Resolution, and thus it is Resolution who now properly holds an interest in the proceeds. We recognize that it would be unfair to force the Fund to satisfy the interests of both Lombardi and Resolution, and as a result we conclude that the judgment of the trial justice should be modified to provide for payment to Lombardi and Resolution as their interest may appear, less any attorney's fee payable to the plaintiff's counsel.

For these reasons, defendant's appeal is denied and the judgment is affirmed. We remand this case to Superior Court with directions to modify the judgment in accordance with this decision.