DECISION
Before this Court is the motion to dismiss submitted by Respondents Robert V. Rossi and Linda A. Rossi (collectively the Respondents). Gem Plumbing and Heating Co., Inc. (Gem) and Sells/Greene Building Company, LLC (Sells/Greene) (collectively the Petitioners) have timely filed objections to the motion.[1] Amicus curiae memoranda were invited by this Court. Several memoranda in this connection have been filed, including a submission by the Department of the Attorney General.
 Facts/Travel
Respondents are the owners of property located at 28 Thurber Boulevard in Smithfield, Rhode Island. On October 27, 2000, Respondents signed a written agreement with a general contractor, Petitioner Sells/Greene,[2]
for the construction of an office building and other improvements to the Smithfield property. Sometime subsequent to the execution of the agreement, construction commenced on the project.
In accordance with G.L. 1956 §§ 34-28-4 and -5[3], Sells/Greene recorded a notice of intention to do work or furnish materials or both (notice of intention) in the land evidence records for the Town of Smithfield on October 29, 2001. Thereafter, on November 14, 2001, Attorney John Bulman, on behalf of Sells/Greene, recorded an amended notice of intention in the land evidence records.
Less than 120 days later, on or about February 25, 2002, and pursuant to G.L. 1956 §§ 34-28-10 to -13, Sells/Greene filed a petition to enforce mechanics' lien and a notice of lis pendens. The amount claimed in the petition for unpaid labor and materials is $129,807.78.
In the meantime, Respondent Robert Rossi also contracted with Petitioner Gem Plumbing and Heating (Gem) to provide the materials and labor required to install water and sewer lines in connection with the construction of the office building. On January 28, 2002, Attorney Robert Levine, on behalf of Gem, recorded a notice of intention to claim a mechanics' lien. One hundred twenty (120) days later, on May 28, 2002, Gem filed a petition to enforce mechanics' lien and a notice of lis pendens. The amount claimed in Gem's petition for unpaid labor and materials is $ 35,500.00.
On June 3, 2002, in response to both Sells/Greene and Gem's petitions to enforce, Respondents paid into the registry of the court two sums of money. First, in connection with the Sells/Greene petition, Respondents paid an amount of $130,404.66 (equaling the total amount of the notice of intention plus $596.88 in costs). Next, in connection with the Gem petition, Respondents paid an amount of $35,860.00 (equaling the total amount of the notice of intention plus $360.00 in costs).
Pursuant to G.L. 1956 § 34-28-17, on June 4, 2002, Respondents filed motions to dissolve, release and discharge mechanics' liens and lis pendens in the matters of both Sells/Greene and Gem. That same day, the court granted the motions filed in both matters, and orders were entered dissolving the mechanics' liens and notices of lis pendens, and stating that the amounts being held on deposit by the registry of the court are substituted to secure any valid mechanics' lien claim of the Petitioners.
Various pleadings and motions have subsequently been filed by all parties. The motion of consequence, as it pertains to this Decision, is the challenge to the constitutionality of the Mechanics' Liens statute, raised by Respondents in their memorandum in support of motion to dismiss petition and release funds from the registry of the court, filed on August 29, 2002. In accordance with Super. R.Civ.P. 24(d), Respondents served the Attorney General with a copy of the proceeding. This matter came to be heard on two occasions. Initially, this Court heard limited argument on September 27, 2002, at which time the Attorney General declined to intervene. Subsequent to this hearing, an order entered on October 23, 2002, inviting the Attorney General and any party to file amicus curiae briefs. Additionally, this Court ordered that notice be given to the major building and construction trade associations for the purpose of advising them of this Court's invitation to file amicus curiae briefs. Finally, this order provided that this matter be scheduled for further hearing. Amicus briefs were subsequently filed by the Attorney General and various building and construction trade associations.
On January 2, 2003, a stipulation was filed by Petitioner Sells/Greene, Petitioner Gem Plumbing and Heating, and Respondents Robert and Linda Rossi, agreeing that the two separate matters may be consolidated for the purpose of resolving the issue of the constitutionality of the Mechanics' Lien Statute.
On February 6, 2003, this Court heard argument in full on the constitutional challenge, and opposition thereto. The central argument of the Respondents is that the Mechanics' Lien statute, G.L. 1956 §§34-28-1 to -37 (the statute), provides for a taking of property without any right to due process, in violation of the Fourteenth Amendment to the United States Constitution and the Rhode Island Constitution. Specifically, Respondents assert that the statute allows any person who claims to perform work or provide materials in construction to place a lien on the same property, without any pre or post-deprivation hearing procedure (short of a full, ultimate determination on the merits) to determine the validity or liability for the alleged debt underlying the claim. Moreover, the Respondents maintain, the only remedy afforded the property owner to remove the lien is to file a bond or deposit sufficient cash to cover the amount of the lien with the registry of the court. Therefore, contend the Respondents, any owner of property upon which a lien has been placed, faces a financial exposure and an interference with their property rights, without the protections of constitutional due process. Accordingly, the Respondents argue that this Court should dismiss the petitions to enforce mechanics' liens and notices of lis pendens. Additionally, Respondents pray that the $166,264.66 and any accrued interest held in the registry of the court be returned to the Respondents.
Petitioners, on the other hand, advance a number of arguments in support of the constitutionality of the Mechanics' Liens statute. Generally, Petitioners aver that the property right affected is a very narrow one, that the level of governmental involvement is low, and that the protections in place are sufficient. The argument of the Attorney General mirrors that of the Petitioners, and asserts specifically that the filing of a mechanics' lien does not constitute a significant deprivation of a property interest and thus due process does not attach. In the alternative, the Attorney General contends that even if due process does attach, the statute provides sufficient safeguards. Arguments contained within the amicus curiae briefs echo the same notes in their support of the constitutionality of the statute. Accordingly, Petitioners, the Attorney General, and parties filing amicus briefs, all urge this Court to deny the motion to dismiss and the motion to release funds posed by the Respondents, and to find that the Mechanics' Liens statute is not unconstitutional.
 Standard of Review
Our Supreme Court has held that the "Legislature is presumed to have acted within its constitutional power." Burrillville Racing Associationv. State, 372 A.2d 979, 982 (1977). Thus, "[i]n cases that challenge the constitutionality of a statute, the party challenging its validity bears the burden of proving that the statute is unconstitutional." Rhode IslandInsurer's Insolvency Fund v. Leviton Manufacturing Company, Inc.,716 A.2d 730 (R.I. 1998) (citing Power v. City of Providence, 582 A.2d 895, 903 (R.I. 1990). Moreover, "one who seeks a judicial veto of a legislative act on constitutional grounds carries that burden of persuasion." Burrillville Racing Association, 372 A.2d at 982. Therefore, Respondents, movants in this action, bear the burden of establishing that chapter 28 of title 34 of the Rhode Island General Laws is unconstitutional. This burden is great, given that courts will not invalidate a legislative enactment unless the challenger can "prove beyond a reasonable doubt" that the statute is "repugnant to a provision in the Constitution." Gorham v. Robinson, 186 A.832, 837 (1936).[4]
 The Mechanics of the Mechanics' Liens Statute
A mechanics' lien is a claim created by law for the purpose of securing payment of the price or value of work performed and materials furnished in erecting or repairing a building or other structure or in the making of other improvements on land, and as such it attaches to the land as well as the buildings erected thereon. 53 Am Jur 2d Mechanics' Liens § 1 (1996). Rhode Island's version of this claim is found in Chapter 28, of Title 34 of the General Laws of Rhode Island, entitled "Mechanic's Liens". This statute is intended to afford a liberal remedy to all who have contributed labor or material towards adding to the value of the property to which the lien attaches. Roofing Concepts, Inc. v. Barry,559 A.2d 1059 (R.I. 1989). The purpose of this statute is to prevent unjust enrichment by one person at the expense of another. Art MetalConstr. Co. v. Knight, 185 A. 136 (1936). Specifically, G.L 1956 §34-28-1(a) provides:
 "Whenever any building, canal, turnpike, railroad, or other improvement shall be constructed, erected, altered, or repaired by oral or written contract with or at the oral or written request of the owner, the owner being at the time the owner of the land on which the improvement is located, or by the husband of such owner with the consent of his wife, the building, canal, turnpike, railroad, or other improvement, together with the land, is hereby made liable and shall stand subject to liens for all the work done by any person in the construction, erection, alteration, or reparation of such building, canal, turnpike, railroad, or other improvement, and for the materials used in the construction, erection, alteration, or reparation thereof, which have been furnished by any person."
The statute for mechanics' liens must be strictly construed as it is in derogation of the common law. Rhode Island Marble Tile Co. v.Spear, 143 A. 777 (1928). Therefore, in order to perfect a mechanics' lien under the Rhode Island statute, a petitioner must closely follow the procedures set forth in G.L 1956 §§ 34-28-4 to -16. Significantly, there are two primary responsibilities of a potential lien holder. First, a person seeking to perfect a mechanics' lien must comply with the requirements of G.L 1956 § 34-28-4. In particular,
 "Notice of intention to claim lien. — (a) . . . the person shall, before or within one hundred and twenty (120) days after the doing of such work or the furnishing of such materials, mail . . . a notice of intention . . . to do work or furnish material, or both, together with a statement that the person so mailing may within one hundred and twenty (120) days after the doing of the work or the furnishing of the materials, file a copy of such notice of intention in the records of land evidence in the city or town in which the land generally described in such notice of intention is located and a further statement that the mailing of the notice of intention and the filing of the copy will perfect a lien of the person so mailing against the land under and subject to the provisions of this chapter, to the owner of record of the land at the time of the mailing, or, in the case of a lien against the interest of any lessee or tenant, to the lessee or tenant . . . ."
G.L. 1956 § 34-28-4(a). This notice of intention must be executed under oath and contain: the name of the owner of record of the land at the time of the mailing; a general description of the land; a general description of the nature of the work done or to be done; the name and address of the person for whom work has been done or is to be done; the name and address of the person mailing the notice and the name and address of the person whose signature will bind the person so mailing on all matters pertaining to the notice or any lien claimed there under; and a statement that the person mailing the notice has not been paid for the work done or materials furnished. G.L. 1956 § 34-28-4(b)(1)-(6). A notice of intention filed under § 34-28-4 covers all work done or materials furnished, or both, and is effective for 120 days from the date of filing. G.L. 1956 § 34-28-9.
Should a dispute subsequently arise as to payment, or should any person performing work or providing materials as described in G.L. 1956 §34-28-1, seek to enforce a properly-perfected mechanics' lien under the statute, a petition to enforce lien must be filed in accordance with G.L. 1956 § 34-28-10.
 "Petition to enforce lien- Lis pendens notice.— (a) . . . the person [claiming a lien] shall file a petition to enforce the lien . . . in the superior court for the county in which is situated the land upon which the building, canal, turnpike, railroad, or other improvement is being or has been constructed, erected, altered, or repaired . . . and . . . such person shall also file in the records of land evidence in the city or town in which the land is located a notice of lis pendens . . . the petition to be filed on the same day as the notice of lis pendens, or within seven (7) days thereafter, and both the petition and the notice of lis pendens to be filed within one hundred twenty (120) days of the date of the recording of the notice of intention . . . ."
G.L. 1956 § 34-28-10(a). The notice of lis pendens shall state that the person filing the notice that day has filed or will file within seven days in the superior court a petition to enforce mechanics' lien. G.L. 1956 § 34-28-11(a). The notice shall also contain: the name of the person against whom the petition has been or will be filed and the relationship of the person to the land upon which the building or other improvement is being or has been constructed; a description of the land; the amount claimed in the petition to be due to the petitioner; the dates of the mailing and of the filing of any notice of intention and the name and address of the person to whom any mailing was made; and the name and address of the petitioner and of his or her attorney, if any. G.L. 1956 § 34-28-11(a).
Absent in this statutory scheme is any provision for a hearing either before or immediately after the filing of the lien. Rather, the property owner who wishes to remove the lien is given the option of either filing a bond or depositing sufficient cash to cover the amount of the lien with the superior court. G.L 1956 § 34-28-17.
 "Dismissal of petition, notice of lien, and release of lien upon deposit in court.— At any time after the recording of a notice of intention or after the filing of a petition to enforce a lien . . . the owner . . . of the land described in the notice or petition may pay into the registry of the court in the county in which the land is located cash equal to the total amount of the notice of intention and the accounts and demands of all persons claiming liens therein . . . including costs of the lien holder, or may, in lieu of cash, deposit in the registry of the court the bond of a surety company . . . in the total amount running to all persons claiming liens . . . and on proper payment or deposit and on motion of the owner . . . any justice of the superior court shall enter ex parte an order discharging the notice of intention and lis pendens and dismissing the cause as to the owner . . . ."
G.L 1956 § 34-28-17.
Considering the various sections of the Mechanics' Lien statute together, one reality emerges. According to the language of G.L 1956 § 34-28-1(a), upon the recording of a notice of intention, the land and improvements of the property owner is made immediately liable and "subject to liens for all work done" by a lienor. G.L 1956 §34-28-1(a). The remedy, then, for a property owner who wishes to remove the lien is to file a bond or deposit sufficient cash to cover the lien with the superior court. G.L 1956 § 34-28-17. There is no provision in the statute for a hearing to determine the validity of the lien or the claim underlying the lien until some point after the filing of the petition to enforce the mechanics' lien.
 Recent Developments in Lien Law in Rhode Island
Beginning in 1969 and continuing through 1991, the United States Supreme Court addressed challenges to the taking of various property interests of individuals without affording an adequate right to hearing. (Resp.'s Mem. of Law at 9). As the relationship between lien law and constitutional due process developed on the Supreme Court level, the United States District Court for the District of Rhode Island, the First Circuit Court of Appeals and the Rhode Island Supreme Court responded to due process challenges in a similar vein.
The year 1969 marks the inception of the evolution. In that year the United States Supreme Court struck down a Wisconsin statute that permitted a creditor to effect prejudgment garnishment of wages without notice and prior hearing to the wage earner. Sniadach v. Family FinanceCorp. of Bay View, 395 U.S. 337 (1969). In Sniadach, the Court held that "Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and prior hearing this prejudgment garnishment procedure violates the fundamental principles of due process." Id. at 342. As the Court explained, "[t]he result is that prejudgment garnishment of the Wisconsin type may as a practical matter drive a wageearning family to the wall." Id. at 341-342.
While Sniadach may have been an obvious decision for the Court, since it concerned a family being deprived of wages, a more difficult and perhaps more significant case confronted the Court three years later. In 1972, the United States Supreme Court struck down Florida and Pennsylvania prejudgment replevin statutes that permitted vendors to have goods seized through ex parte application to a court clerk and the posting of a bond. Fuentes v. Shevin, 407 U.S. 67 (1972). In Fuentes, the Court held that the prejudgment replevin provisions "work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor." Id. at 96. In writing for the Court, Justice Stewart explained that
 "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment — to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference."
Id. at 80-81. The Fuentes Court was particularly concerned with the necessity to provide an opportunity for a hearing at a `meaningful time.'Id. at 80. As the Court articulated rather simply, "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." Id. at 81. In Fuentes, the Petitioners seeking to enforce the statute endeavored to support its constitutionality by relying on the purported `safeguards' in the statutes. Id. at 83. Specifically, the statutes require that a party seeking a writ must first post a bond, allege conclusorily that he is entitled to specific goods, and open himself up to possible liability in damages if he is wrong. Id. Rejecting that proposition, the Court pointed out that those requirements "test no more than the strength of the applicant's own belief in his rights. Since his private gain is at stake, the danger is all too great that his confidence in his cause will be misplaced . . . . Because of the understandable, self-interested fallibility of litigants, a court does not decide a dispute until it has had an opportunity to hear both sides."Id. In sum, the Fuentes Court concluded that the bond requirement is no replacement for the right to a prior hearing. Id.
In response to the landmark ruling in Fuentes, the United States District Court for the District of Rhode Island (District Court) summarily declared the Rhode Island prejudgment attachment procedure pursuant to G.L. 1956 § 10-5-1 et seq. unconstitutional. McClellan v.Commercial Credit Corp., 350 F. Supp. 1013 (D.R.I. 1972). In McClellan,
the District Court recognized that the Rhode Island attachment statute did not require judicial notice or judicial hearing prior to issuance of the writ or seizure of property of the defendant. Id. at 1014. In fact, under the then-existing statutory scheme, a person wishing to attach property of another need only have an attorney fill out a form writ, execute an affidavit, and deliver them with a summons and complaint to a sheriff for service. Id. In light of Fuentes, the McClellan Court concluded that "[i]t is patent that the pre-judgment attachment procedures employed in Rhode Island pursuant to Title 10, Chapter 5, R.I.G.L. are unconstitutional." Id. at 1014.
The response to McClellan by the Rhode Island court system was swift. That same year, the Rhode Island Superior Court adopted, with the approval of the Rhode Island Supreme Court, an amendment to Rule 4(j) of the Superior Court Rules of Civil Procedure. The result was that the amended "Rule 4(j) placed a greater burden on a party seeking to attach property. The moving party must demonstrate at a hearing that the party has a likelihood of success on the merits. In addition, the moving party must demonstrate the need for security." Martin v. Lincoln Bar, Inc.,622 A.2d 464 (R.I. 1993). The amendment reads in pertinent part:
 "Attachment and Trustee Process.
 (3) Same: Issuance. The writ of attachment may be procured in blank from the clerk, shall be filled out by the plaintiff's attorney as provided in paragraph (2) of this subdivision, and shall be submitted to the court with a motion for its issuance. The motion shall be granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interests and costs. A motion hereunder shall not be granted ex parte. Security may be required in connection with issuance of any writ of attachment. A surety upon a bond or undertaking hereunder shall be subject to the provisions of Rule 65(c)."[5]
Super. R.Civ.P. 4(j).
The following year, in order to correct the constitutional violations that moved the McClellan Court to strike down the pre-judgment attachment procedures, the Rhode Island General Assembly amended the attachment statute, G.L. 1956 § 10-5-2. This amendment added a procedure to ensure that defendants received advance notice and a hearing before a court allowed a plaintiff to attach a defendant's property. Specifically, the statute was revised to include the language:
 "At the time of the commencement of the action, or at any time thereafter, a plaintiff must file a motion in said court for authority to attach said defendant's assets including his personal or real estate, and the said motion must state the day, time and place of hearing and a copy must be served by the process server on the defendant or be leaving it at his last and usual place of abode with some person there at least five (5) days before the fixed date of hearing."[6]
G.L. 1956 § 10-5-2. Consequently, by 1973, both the Rhode Island statutory scheme, as well as the Superior Court Rules of Civil Procedure, had responded to the holding of Fuentes, and the mandate ofMcClellan. These responses recognized that constitutional due process requires an opportunity to be heard before property interests can be interfered with by the mechanism of a writ of attachment.
The next year, in 1974, the United States Supreme Court again dealt with a challenge to an alleged violation of due process in the interference with property rights without proper hearing. Mitchell v.W.T. Grant Co., 416 U.S. 600 (1974). In Mitchell, the Court upheld a Louisiana ex parte procedure allowing a lien holder to have disputed goods sequestered. Id. While declining to find a due process violation this time, the Mitchell Court engaged in a thorough analysis, distinguishing the Lousiana statute from those at issue in Fuentes. Id.
In particular, the Mitchell Court explained, "Under Louisiana procedure . . . the debtor . . . was not left in limbo to await a hearing that might or might not `eventually' occur, as the debtors were under the statutory schemes before the Court in Fuentes. Louisiana law expressly provides for an immediate hearing and dissolution of the writ `unless the plaintiff proves the grounds upon which the writ was issued.'" Id. at 618. Relying then, on the safeguards of an immediate hearing or subsequent dissolution of the writ, the Mitchell Court was satisfied that the requirements of due process were satisfied.
Soon thereafter, in 1975, the United States Supreme Court expounded further on its decision in Mitchell, emphasizing again the safeguards inMitchell that satisfied due process. North Georgia Finishing, Inc., v.Di-Chem, Inc. 419 U.S. 601 (1975). In North Georgia Finishing, the Court invalidated an ex parte garnishment statute that failed to provide any of the Mitchell due process safeguards. Id. Specifically, the Court found that the Georgia statute failed to provide for notice and prior hearing, failed to require a bond, failed to require a detailed affidavit setting out the claim, failed to require a determination by a neutral magistrate, and failed to provide a prompt post-deprivation hearing. Id.
at 606-608. In noting the contrast with the procedures in Mitchell, the Court explained, "[t]he Georgia garnishment statute has none of the saving characteristics of the Louisiana statute." Id. at 607. The NorthGeorgia Finishing Court, in striking down the statute, found that even a temporary interference with property interests, without proper safeguards, violates due process. Id. at 606. "That the debtor was deprived of only the use and possession of the property, and perhaps only temporarily, did not put the seizure beyond the scrutiny under the Due Process Clause." Id.
During the 1970's, while the United States Supreme Court was repeatedly addressing due process challenges to property interests that had been seized or sequestered, courts around the country were addressing due process challenges to property interests subject to mechanics' liens. In dealing with these challenges, courts were divided as to whether or not the taking by a mechanics' lien is a significant property interest in violation of the Fourteenth Amendment. Several courts found that there was, in fact, a significant property interest. See RoundhouseConstruction Corporation v. Telesco Masons Supplies Company, Inc.,362 A.2d 778 (Conn. 1975); Barry Properties, Inc. v. The Fick BrothersRoofing Company, 353 A.2d 222 (Md. Ct. of App. 1976). Other courts failed to find a significant property interest that would trigger the protections of the Due Process Clause. See Cook v. Carlson, 364 F. Supp. 24
(D. SD. 1973); Speilman-Fond, Inc. v. Hanson's, Inc., 379 F. Supp. 997
(D.Ariz. 1973) (three judge panel), aff'd mem., 417 U.S. 901 (1974).
In 1991, the United States Supreme Court addressed the issue concerning "unseized" property, announcing that the property interests that attachment affects are significant, and "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."Connecticut v. Doehr, 501 U.S. 1 (1991). Cognizant of its 1972 Fuentes
opinion, finding a significant property interest in property seized by prejudgment replevin statutes, the Doehr Court expanded this ruling to find a significant property interest in property attached by a prejudgment attachment statute. Id. "For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause." Id. at 11. The Doehr Court made explicit that "[w]ithout doubt, state procedures for creating and enforcing attachments, as with liens, `are subject to the strictures of due process' Peraulta v. Heights Medical Center, Inc., 495 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988)." Id. at 12. In Doehr, the Court also went out of its way to explain its summary affirmation of theSpeilman-Fond decision, which failed to find a significant property interest at issue. Id. Specifically, the Court clarified,
 "Our summary affirmance in Speilman-Fond (citation omitted) does not control. In Speilman-Fond, the District Court held that the filing of a mechanics' lien did not amount to the taking of a significant property interest. (citation omitted) A summary disposition does not enjoy the full precedential value of a case argued on the merits and disposed of by a written opinion. (citation omitted) The facts of Speilman-Fond presented an alternative basis for affirmance in any event. Unlike the case before us, the mechanics' lien statute in Speilman-Fond required the creditor to have a pre-existing interest in the property at issue. 379 F. Supp. at 997. As we explain below, a heightened plaintiff interest in certain circumstances can provide a ground for upholding procedures that are otherwise suspect." (citation omitted)
Id. Having found that a significant property interest was at issue, theDoehr Court went on to decide that the risk of deprivation that the State permits is too great. Id. "The potential for unwarranted attachment in these situations is self-evident and too great to satisfy the requirements of due process absent any countervailing consideration."Id. at 14. Furthermore, the Court concluded that "absent such allegations [of an attempt to transfer or encumber real estate] . . . the plaintiff's interest in attaching the property does not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery." Id. at 16.
Later that same year, the Court of Appeals for the First Circuit paid homage to the holding in Doehr, and struck down a statutory lien imposed by the Environmental Protection Agency pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Reardonv. U.S, 947 F.2d 1509 (1st Cir. 1991). In Reardon, the court held that the lien statute at issue denies due process by failing to provide for notice and predeprivation hearing. Id. The Reardon Court concluded that "the lien on real property created in 42 U.S.C. § 9607(l) amounts to deprivation of a `significant property interest' within the meaning of the due process clause." Id. at 1518. In overruling the decision of the District Court, the Court of Appeals noted that
 "[t]he District Court, relying primarily on Speilman-Fond (citation omitted) found that the filing of a federal lien under 42 U.S.C. § 9607(l) did not amount to a deprivation of a significant property interest; thus, the court did not reach the second step of the analysis. However, a Supreme Court case decided after the district court had issued its decision . . . has clarified the law in this area considerably, and has precluded continued reliance on the Court's summary affirmance in Speilman-Fond."
Id.
Most recently, in 1994, the Rhode Island Supreme Court struck down a section of the Rhode Island statute dealing with writs of attachment.Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194 (R.I. 1994). This statute was originally declared unconstitutional by the District Court in 1972. McClellan v. Commercial Credit Corp., 350 F. Supp. 1013 (D.R.I. 1972). As discussed previously, G.L. 1956 § 10-5-2 and Super. R.Civ.P. 4(j) were both amended in response to the District Court ruling in McClellan. However, until 1994, G.L. 1956 § 10-5-5 remained unchanged. The Shawmut Bank Court traced the history of property law and due process, and took into account the holdings of Fuentes and Doehr in declaring G.L. 1956 § 10-5-5 unconstitutional. Shawmut Bank of RhodeIsland v. Costello, 643 A.2d 194 (R.I. 1994). In Shawmut Bank, the Court held that the property interest at stake is significant, that the risk of erroneous deprivation permitted by the statute is substantial, and that any burdens that an additional procedural requirement would entail would be minimal. Id. at 199-202.
Against the backdrop of this evolving status of lien law, the Respondents in the instant matter urge this Court to find that the Rhode Island Mechanics' Lien statute is violative of due process and therefore unconstitutional.
 The Property Interest at Issue
The threshold inquiry in a due process challenge to statutes that involve property rather than liberty interests is "whether the statute authorizes the taking of a `significant property interest' protected by the fifth amendment." Reardon v. U.S, 947 F.2d 1509, 1517 (1st Cir. 1991). The Respondents argue that this issue has been settled by the holdings in Doehr and Reardon. In particular, the Respondents contend that the mechanics' lien filed in the instant matter has had the very effect about which the Courts in Doehr and Reardon were concerned. Specifically, the Respondents assert that the lien in the matter at hand has prevented the Respondents from the use and control of more than $166,264.66 in order to preclude defaulting on certain loan provisions relating to the mortgage on the property. Accordingly, Respondents argue, a significant property interest has been implicated, without any of the protections required by the Due Process Clause.
The Petitioners, on the other hand, argue that the mechanics lien does not deprive a person of a significant property interest. In support of this position, the Attorney General advances an argument relying primarily on cases that preceded the holding in Doehr. In particular, the Attorney General asks this Court to rely on Speilman-Fond, which failed to find a significant property interest implicated by a mechanics' lien statute. In addition, the Attorney General asks this Court to rely on an Indiana Court of Appeals case which was decided four years after Doehr.Haimbaugh Landscaping, Inc. v. Jegen, 653 N.E.2d 95 (Ind.App. Ct. 1995). In Haimbaugh, the court examined a mechanics' lien statute and failed to find a significant property interest implicated. Id. The Petitioners, adopting the position of the Attorney General, maintain that since no significant property interest is implicated in the filing of a mechanics' lien, the due process inquiry is over and the statute passes constitutional muster.
This Court finds that post-Doehr, there is no longer any valid argument that a mechanics' lien does not implicate a significant property interest. To begin with, this Court finds that reliance on Speilman-Fond
is misplaced. As the Court of Appeals in Reardon warned, Doehr has "precluded continued reliance on the Court's summary affirmance inSpeilman-Fond." Reardon v. U.S., 947 F.2d 1509, 1517 (1st Cir. 1991). This Court finds that reliance on Haimbaugh is also misplaced. In this connection, this Court notes that the case is not controlling legal authority, having been decided by an appeals court in Indiana. Moreover, this Court agrees with the Respondents that Haimbaugh may have been decided differently, had the facts in the instant matter been before theHaimbaugh Court. Specifically, if instead of the "hypothetical injury" as contemplated in Haimbaugh, that court had before it the actual injury of the Respondents in the instant matter, the outcome may have been different. In any event, the Haimbaugh Court failed to properly apply the holding of Doehr, instead drawing what this Court considers to be a fictional distinction between attachments and liens.
On the contrary, the United States Supreme Court, in its thorough analysis of the due process challenge to the attachment procedure inDoehr, concluded that interferences with property interests, including "liens" implicate a significant property interest. Connecticut v. Doehr,501 U.S. 1, 12 (1991). While the statute in Doehr dealt with prejudgment attachment of real estate, rather than a mechanics' lien, the Doehr Court was principally concerned with the effects of the procedure: clouding title; impairment of the ability to sell or otherwise alienate the property; tainting a credit rating; reducing the chance of obtaining a home equity loan or additional mortgage; and placing an existing mortgage in technical default where there is an insecurity clause. Id. at 12. Taking these possible consequences into consideration, the Doehr Court concluded that the attachment proceeding that allowed for these consequences implicated a significant property interest. Id. Similarly, upon the filing of a notice of intention in a mechanics' lien case, the very same consequences may flow. Surely then, if the Doehr Court was concerned about particular consequences in an attachment procedure, it defies logic to suggest that the Supreme Court would not be equally concerned if the same consequences were to flow from a mechanics' lien. Furthermore, notwithstanding the fact that the statute at issue in Doehr
concerned an attachment procedure, the Court went out of its way to include liens within its discussion. Id. Specifically, the Court stated that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Id. Given the similarities between attachment procedures and mechanics' liens, as well as the similar ensuing effects therefrom, and recognizing that the Doehr Court saw fit to include liens within its reach, this Court finds that the Rhode Island Mechanics' Liens statute implicates a significant property interest.
 The Process Due
Once a statute has been found to authorize the taking of a significant property interest protected by the Fifth Amendment, the analysis turns to examine what process is due in the particular circumstances. Reardon v.U.S, 947 F.2d 1509, 1517 (1st Cir. 1991). The United States Supreme Court, in 1976, set forth a threefold inquiry to determine how much process should be afforded a property owner prior to or after a deprivation. Matthews v. Eldridge, 424 U.S. 319 (1976). The Matthews test requires a court to balance three factors. Id. More recently, the Doehr
Court reaffirmed the Matthews inquiry, explaining that the relevant inquiry under Matthews requires:
 "first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to Matthews, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections."
Connecticut v. Doehr, 501 U.S. 1 (1991). The Doehr version of theMatthews test adjusts the third prong "to include an analysis of a private party's interest in the remedy when a private party as opposed to the government is acting to effect a deprivation." Shawmut Bank of RhodeIsland v. Costello, 643 A.2d 194 (R.I. 1994).
As to the first prong of the test, the Respondents aver that the private interest affected by a mechanics' lien is the right to utilize the financial benefits of owning real estate. Moreover, the Respondents explain, a mechanics' lien deprives a property owner from the opportunity to take economic advantage of the equity in a property. The Respondents also specify that in the instant matter, the private interest affected is the money currently in the registry of the court.
The Petitioners, on the other hand, contend that because the owner of the property remains in full possession of the subject property, that the property right affected is a very narrow one. In fact, argue the Petitioners, the private interest at stake must be minimal, since there is no physical deprivation of property. The Attorney General shares the view of the Petitioners that the affected private interest is minimal, supporting his position with the previous argument that the interest is not "significant" in the context of a due process challenge.
Taking into consideration the principles articulated in holding that a mechanics' lien implicates a significant property interest; this Court finds that the private interest affected by the mechanics' lien is likewise of considerable importance. Under the Mechanics' Liens statute, upon the recording of a notice of intention, the owner of the subject property suffers both immediate as well as potential consequences. First, the landowner is immediately deprived of clear title to land. In addition, the owner's credit rating is likely to be tainted. Moreover, an existing mortgage could technically be in default in the event of an insecurity clause. Furthermore, should the property owner endeavor to sell or otherwise alienate the property, for example, by obtaining (further) financing secured by a mortgage or an additional mortgage, such owner may find this task difficult, or indeed impossible, with a lien against the subject property. Finally, with all of these consequences looming, the property owner may elect to rid the property of the lien. Unfortunately for the property owner, before this feat may be accomplished, the Mechanics' Liens statute works another deprivation. To free the property from a mechanic's lien, the property owner must either purchase and file a bond or deposit sufficient cash to cover the amount of the lien with the registry of the court, as was done in the case at bar. Accordingly, this Court finds that the private interest implicated by the mechanics' lien is of tremendous significance. Moreover, this Court rejects the argument advanced by the Petitioners which suggests that in order for a private interest to be significant, that property must be seized. The United States Supreme Court rejected that argument in 1991 inDoehr, and this Court likewise finds no merit in the argument twelve years later.
As to the second prong of the Matthews test, the Respondents argue that the risk of erroneous deprivation under the Mechanics' Liens statute is high. In support of this assertion, the Respondents point out that the person or entity claiming a lien is under no requirement to at least show a reasonable likelihood that the underlying debt is due or valid. In fact, the Respondents contend, the only threshold fact required to impose the lien is that work, services or material were supplied. Further, the Respondents maintain that under the existing infirm statutory procedure, no judicial determination must be made at the outset concerning these threshold facts. Finally, argue the Respondents, under the statute, there is no right to any pre- or post-deprivation hearing to determine the validity and enforceability of the underlying debt. Therefore, urge the Respondents, not only is the risk of error high, but there are no corrective mechanisms available to the property owner.
The Petitioners, on the other hand, contend that the risk of an erroneous deprivation is substantially limited by the statutory requirement of the statement under oath. The Petitioners contend that the penalties of perjury prevent the danger of any false or incorrect statement being offered in support of a mechanics' lien. Likewise, the Attorney General pays great heed to the purported safeguards in the statute. For example, the Attorney General suggests that the mere fact that in order to perfect a mechanics' lien, the claimant must file a notice within 120 days of performing the work constitutes a safeguard. In addition, the Attorney General suggests the option of the property owner to purchase a bond or deposit sufficient cash into the registry of the court as a surefire safeguard. Finally, and most importantly according to the Attorney General, the statute provides that the respondent "may contest the right of the petitioner . . . claiming the lien." (Attorney General's Amicus Curiae Mem. of Law at 17).
This Court finds that the risk of erroneous deprivation permitted by the Mechanics' Liens statute is substantial. To begin with, the statute allows any person seeking to perfect a lien, to record a notice of intention containing a sworn statement of the amount allegedly owed. Under the statute, the "due process" afforded the property owner consists of no more than the recording of the sworn statement. Once the notice has been recorded, the lien is perfected and the negative repercussions to the property owner begin to flow. These repercussions flow regardless of the truth, accuracy or validity of the claimed amounts due under the lien. These repercussions flow before any judicial determination has been made as to the validity of the lien. In fact, these repercussions flow before any judge of any court has ever seen the notice of intention. And, most significantly, these repercussions flow before the property owner has any opportunity whatsoever to challenge the truth, accuracy, or validity of the amounts claimed under the lien. Instead, the property owner must suffer the consequences based on a claimant's bald assertions until the property owner either makes the payment in full, purchases a bond, deposits sufficient cash to cover the claim in the registry of the court, or hires an attorney to contest the claim at some later, unspecified time. In fact, from the time that a notice of intention is recorded, a person seeking to enforce a lien has a statutorily-granted 120 day period within which a petition to enforce must be filed. Thus, a potential claimant may wait four months from the time of recording the notice of intention before an enforcement action is commenced. But the wait for the property owner seeking to contest the lien is not over even at this point. Rather, it is up to the property owner to file an objection to the enforcement action with the court and to seek a hearing date at some point thereon. The statute does not provide for any immediate hearing, nor does the statute provide for any time period within which a hearing must take place. In the meantime, the untested lien remains on the owner's property. Until one of these further deprivations is elected, the property owner suffers from all of the financial problems associated with property subject to a lien.
This Court finds that the "safeguards" held up by the Petitioners as a bulwark against any potential injustice range from mere formality to further injury to the property owner. First, the notion that the penalty of perjury is any safeguard to a disputed money claim fails to persuade this Court. The suggestion that because the singular document required to be filed must be sworn will somehow prevent any deliberate or innocent errors is beyond credulity. Furthermore, the argument that an additional safeguard lies in the provision that the respondent may contest any claim is also without merit. When this opportunity arises is not made clear by the statute. However, what is clear is that any such opportunity comesafter the imposition of the lien. In the meantime, the property owner is deprived of all that is associated with clear title to her property. Moreover, this opportunity must be initiated by the property owner. The statute does not provide for any immediate post-deprivation hearing. Consequently, any such "safeguards" are too little and too late to satisfy the requirements of due process.
In striking down the attachment statute, the Rhode Island Supreme Court concluded, "Section 10-5-5 provides less protection against erroneous deprivation than the protections noted and upheld in Mitchell and the minimal protections struck down in Doehr. Consequently the practice of an ex parte proceeding under § 10-5-5 poses an unacceptable peril of error." Shawmut Bank of Rhode Island v. Costello, 643 A.2d 194 (R.I. 1994). Likewise, this Court finds that the Mechanics' Liens statute provides less protection against erroneous deprivation than the protections noted and upheld in Mitchell and the minimal protections struck down in Doehr. Accordingly, ex parte proceedings under the Mechanics' Liens statute pose an unacceptable peril of error. Moreover, this Court finds that the probable value in additional or alternative safeguards is considerable.
The final prong of the Matthews test requires this Court to examine the interest of the private party in the ex parte procedure, together with the government's interest in forgoing the added burden of requiring greater protections. The Respondents argue that the cost or burden to government in providing the property owner an opportunity to be heard is outweighed by the benefits that are required under the Fourteenth Amendment.
The Petitioners, on the other hand, argue that a requirement that a formal hearing be held in superior court before a mechanics' lien could issue would place an undue burden on the courts of the state. Concerned about potentially "tying up substantial Court time and resources," the Petitioners paint a picture of untold numbers of builders and contractors banging on the courthouse doors. (Pet.'s Mem. of Law at 9). The Petitioners also suggest that any judicial inquiry at such a proposed initial hearing would not be any more "in depth" than that contemplated by the statute. (Pet.'s Mem. of Law at 9). The Attorney General, in his argument, focuses primarily on the interest of the lien holder to secure payment for his labor and materials.
This Court finds that the Mechanics' Liens statute is so lacking in minimal constitutional protections that the potential governmental burden that an additional procedural requirement would entail is far outweighed by the benefits incident to the fundamental principles of due process. This Court also finds that while a potential claimant certainly has an interest in getting paid; that claimant, like all others, can suffer through the constitutionally-required exercise of a hearing prior to depriving the property owner of the process which is due.
 Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, this Court finds that the Mechanics' Liens Law, found in Chapter 28 of Title 34 of the General Laws of Rhode Island, is unconstitutional beyond a reasonable doubt. This statute fails to provide the procedural due process rights required by the Fourteenth Amendment to the United States Constitution and by Article 1, Section 2 of the Rhode Island Constitution.
Prevailing counsel shall present an appropriate order and judgment reflecting the foregoing, which, inter alia, should include a stay of the effect of the judgment for 30 days. Said order and judgment to be presented to the Court not later than April 30, 2003.
[1] Pursuant to the Stipulation of the parties filed January 2, 2003, the matter entitled Sells/Greene Building Company, LLC v. Robert V. Rossiand Linda A. Rossi, C.A. No. PB 02-1019, is consolidated with the matter entitled Gem Plumbing and Heating Co., Inc. v. Robert V. Rossi and LindaA. Rossi, C.A. No. PB 02-2778, for the purpose of resolving the issue of the constitutionality of the Mechanics' Lien Statute.
[2] Sells/Greene Building Company, LLC is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and with its place of business located in Massachusetts. Sells/Greene has a certificate of authority to transact business in Rhode Island.
[3] G.L. 1956 §§ 34-28-4 and -5 are sections of Chapter 28, the Mechanics' Liens statute, the constitutionality of which is challenged by Respondent.
[4] This Court notes that in the matter of Sells/Greene BuildingCompany, LLC v. Robert V. Rossi and Linda A. Rossi, C.A. No. PB 02-1019, Respondent filed an answer in the case. Pursuant to Super. R.Civ.P. 81(a)(1), however, the Rules of Civil Procedure are not applicable to petitions for enforcement of mechanics' liens. Therefore, this Court will treat the answer as a nullity.
[5] The 1995 amendment to Rule 4 resulted in the relettering of several sections, including (j). The 1972 version of 4(j) is now lettered Super. R.Civ.P. 4(m)(3). The language has not been altered.
[6] G.L. 1956 § 10-5-2 was amended again in 1984, P.L. 1984, ch. 354, § 2, and again in 1986, P.L. 1986, ch. 320, § 1. Minor alterations were made which are not relevant to this Decision.